[No. B034417. Second Dist., Div. One. Apr. 7, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL DUANE COULTER, Defendant and Appellant.

COUNSEL

Harvey Zall, State Public Defender, under appointment by the Court of Appeal, and Nancy Gaynor, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Richard L. Walker and Alfredo X. Jarrin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ORTEGA, J.—Paul Duane Coulter appeals from the judgment entered following his conviction by jury of 10 counts of lewd conduct with children under 14 years of age with use of obscene or sexually explicit material. (Pen. Code, §§ 288, subd. (a); 1203.066, subd. (a)(10).) He was sentenced to 26 years in prison. Appellant contends the evidence regarding six counts against one victim was insufficient, the prosecutor committed prejudicial misconduct during closing argument, and the trial court improperly imposed consecutive two-year terms on six counts.

We conclude appellant's contentions are unmeritorious or unavailing, and affirm.

FACTS

Viewed in accord with the usual rules governing appellate review (*People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]), the evidence established that appellant's nephew Christopher T. lived with him from December 1986 through February 1987. Christopher's three friends Jason T. and Jeffrey F., both 13 years old, and Jason D., 12 years old, occasionally stayed overnight on weekends. Appellant routinely permitted the boys to drink beer and watch a pornographic movie. While living with appellant, Christopher did not know, nor did his friends complain, of any objectionable conduct.

Jason D. first stayed overnight with Christopher and appellant shortly before Halloween in October 1986. Jason D. drank beer and watched a

pornographic movie supplied by appellant. Appellant told Jason D. a girl would arrive and orally copulate the boys. Jason D. went to sleep alone in appellant's bed and awoke to find appellant orally copulating him. Jason D. tried to roll away but appellant flipped him over and continued orally copulating him until he climaxed. Appellant then left. Jason D. did not tell anyone because he was embarrassed.

Appellant committed nearly identical assaults on Jason D. on two consecutive weekend nights near Thanksgiving in November 1986, shortly after Christmas in December 1986, the third week in January 1987, and the second week in February 1987. Jason D. stayed overnight on other occasions when nothing happened. When Jason T. or Jeffrey F. stayed overnight along with Jason D., Jason D. was not assaulted. Jason D. told no one of the assaults until Jason T. disclosed appellant had committed a similar assault on him. Jason D. told his second police interviewer that appellant assaulted him five times, including once in November 1986, twice in December 1986, but never in February 1987. He was confused about dates.[1]

In defense, Long Beach Police Officer Bryan McMahon, the first officer to interview Jason D., testified that Jason D. told him appellant assaulted him three or four times between early January and mid-February 1987. Appellant's sister claimed her son Christopher began living with appellant the second week of January 1987 and never stayed overnight from October through December 1986. Appellant admitted permitting the boys to drink beer and watch pornographic movies but denied committing any sexual assaults and claimed Christopher began living with him shortly after Christmas in December 1986.[2]

The prosecutor began his closing argument by stating ". . . I sit and listen to defense attorneys talk. [¶] I keep waiting for them to stand up before you and say I'm convinced beyond a reasonable doubt like you are. [¶] And this isn't common of [defense counsel], where he does a very, very good job. [¶] The reality is he has a duty to represent the defendant. [¶] His duty is to come up here before you and try to give you a reason if you want

---

[1] Appellant does not challenge the sufficiency of the evidence supporting the remaining charges. Suffice it to say that in January and February 1987, appellant committed three nearly identical assaults on Jason T. and one on Jeffrey F.

[2] The information alleged all six crimes committed against Jason D. occurred between October 1, 1986, and February 22, 1987. The jury was instructed pursuant to former CALJIC No. 17.01 that "The defendant is charged with the offense of lewd acts with a child. He may be found guilty if the proof shows beyond a reasonable doubt that he committed any one or more of such acts, but in order to find the defendant guilty, all the jurors must agree that he committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict." CALJIC No. 17.01 subsequently was rewritten, although its substance remains the same. (See CALJIC No. 17.01 (5th ed. 1988).)

that reason to find the defendant not guilty. [¶] His duty is to try to create a doubt." When defense counsel objected to this argument as improper, the trial court admonished the jury ". . . remember that whatever counsel say, either attorney, is not evidence. [¶] You heard the evidence. [¶] You will decide the case from the facts. [¶] They are now summarizing the case from their point of view."

Without further objection, the prosecutor continued: "He told you about, as [defense counsel] said—again, I will repeat it is because I don't want anybody mislead [*sic*]. [¶] What he did, what [defense counsel] talked about—what I'm going to comment about, what he said—I'm not trying to imply it was improper or anything else. [¶] I'm just giving you examples of what he did, is a very good job, a very fine job."

At sentencing, the court considered a probation report which included appellant's lack of any prior criminal record, continued denial of culpability, and lack of remorse. The report listed the vulnerability of multiple victims, premeditation, and violation of a position of trust as aggravating factors, and no mitigating factors. The probation officer stated appellant was ineligible for probation and, based on the aggravating factors and the unlikelihood of rehabilitation, recommended imposition of a maximum upper base and consecutive subordinate sentence.

Appellant argued his lack of prior criminal record was a mitigating factor and he now was remorseful. The prosecutor conceded appellant's lack of criminal record was a mitigating factor but argued his remorse was feigned. Based on the same considerations listed in the probation report, the prosecutor recommended imposition of an eight-year upper base term and consecutive two-year subordinate terms on the remaining nine counts for a total of twenty-six years.

In determining whether to grant probation, the court agreed appellant's lack of prior criminal record was a mitigating factor, but nonetheless found the case not unusual and denied probation. The court imposed a 26-year sentence structured as recommended by the prosecutor.[3]

---

[3] In imposing sentence, the court stated: "Count I the court selects as the base term, the princip[le] term. The court sentences the defendant to the high base of eight years. [¶] . . . . [¶] The court has selected high base because the court does find from the facts that the defendant planned with some degree of sophistication the crime involved in count I. [¶] On count II, the court sentences the defendant to one-third the mid base, which would be one-third of six or two years to run consecutively. [¶] The reason the court uses that, there were multiple victims in this case. [¶] On count III the court sentences the defendant to two years, one-third the mid base. [¶] The reason the court sentences the defendant consecutively, in the court's opinion this showed a high degree of cruelty the way this thing was done. [¶] On count IV, we have another victim. [¶] On counts I, II and III the victim was Jason T[.] [¶] On counts IV [through] IX the victim was Jason D[.] [¶] The court sentences the defendant on count IV to one-third the mid base consecutively, and additional two years. [¶] The court

## ISSUES

■■ Appellant contends (I) his convictions for the six crimes committed against Jason D. must be reversed because there was insufficient evidence to tie any crime to a specific date or charge or otherwise distinguish it from any other. ■■ Appellant further contends (II) the prosecutor committed prejudicial misconduct by arguing to the jury that defense counsel was obligated to create a doubt even if he believed appellant guilty. ■■ Finally, appellant contends (III) the case must be remanded for resentencing because the court improperly relied on the factors of multiple, young, vulnerable victims and cruelty in imposing consecutive sentences on six of the nine subordinate terms.

## DISCUSSION

### I.

■■ The contention that appellant's convictions for the six crimes against Jason D. must be reversed because the evidence failed to tie any crime to a specific date or charge or otherwise distinguish it from any other is without merit. Appellant was charged with committing six sexual assaults against Jason D. between October 1, 1986, and February 22, 1987. Jason D. testified to six such assaults, all occurring within the charged period. The jury was instructed pursuant to former CALJIC No. 17.01. All the crimes occurred on weekends. Jason D. tied each assault to a specific time: shortly before Halloween in October 1986; two consecutive nights near Thanksgiving in November 1986; shortly after Christmas in December 1986; the third week in January 1987; and the second week in February 1987. Appellant's defense was neither alibi nor misidentification but rather denial. Appellant ignores the prosecution evidence or argues it should be discounted because

chooses to run it consecutively because, again, the court finds a high degree of cruelty involved. [¶] On count V the court sentences the defendant to one-third the mid base for two years based upon the fact Jason D[.] was a multiple victim. [¶] The court sentences the defendant on count VI to one-third the mid base, two years consecutive. [¶] The court chooses to run the term consecutive because the defendant was in a position of trust. [¶] On count VII the court sentences the defendant to two years, one-third the mid base, because the crime did involve planning and sophistication. [¶] On count VIII the court sentences the defendant to one-third the mid base to run consecutively. [¶] The court chooses consecutive based upon the fact that the convictions here are numerous and the crimes were independent of each other. [¶] The crime on count IX the court sentences the defendant to two years, one-third the mid base, to run consecutively based upon the fact that . . . the victim was young and vulnerable. [¶] On count X, the court sentences the defendant to one-third the mid base, two years, to run consecutively based upon the fact that, again, the court finds that the crime involved a high degree of planning and sophistication. [¶] And Jeffrey F[.] is another victim, an independent victim. [¶] Since all of the counts run consecutively, the total comes to 26 years."

Jason D. gave prior inconsistent statements to the police and Christopher, his mother, and appellant claimed Christopher neither resided nor stayed with appellant before December 1986. However, those three witnesses all had a motive to assist appellant and contradicted each other regarding when Christopher began staying with appellant: Christopher said he began living with appellant in December 1986; appellant claimed Christopher's stay began after Christmas in December 1986; and Christopher's mother testified he began living with appellant the second week of January 1987. Thus, it was reasonable for the jury to accept Jason D.'s testimony and reject that of appellant and his relatives. ■ In any event, appellant's claim amounts to no more than a request that this court reweigh the evidence and substitute its judgment for that of the jury. That is not the function of an appellate court. (*People* v. *Barnes, supra,* 42 Cal.3d at p. 303.)

■ Even if this case were factually similar to those upon which appellant primarily relies (*People* v. *Luna* (1988) 204 Cal.App.3d 726, 737-749 [250 Cal.Rptr. 878]; *People* v. *Atkins* (1988) 203 Cal.App.3d 15, 17-23 [249 Cal.Rptr. 863]; *People* v. *Van Hoek* (1988) 200 Cal.App.3d 811, 814-818 [246 Cal.Rptr. 352]), we decline to follow those cases, all decided by the Fifth District. Those cases all reverse convictions of "resident child molester[s]", defined as ". . . person[s] who either reside[] in the same home with the minor or ha[ve] unchecked access to the child and repeatedly sexually molest[] the child over a prolonged period of time." (*People* v. *Van Hoek, supra,* 200 Cal.App.3d at p. 814, fn. 1.) In each case, victims testified to identical recurring sexual assaults during periods of contact with the defendants, but did not link specific attacks to particular times, dates, locations, or charges. The Fifth District struggled to balance the undesireable result of "insulat[ing] the most egregious child molesters from prosecution" (*id.,* at p. 814) by rendering such testimony inadequate as a matter of law, against defendants' due process rights to notice and opportunity to prepare an adequate defense. Those cases resolved this conflict by reversing convictions because such evidence deprived the defendants of due process by denying them sufficient notice upon which to prepare a defense.

Although not cited by appellant, the Fifth District again applied the *Van Hoek* rationale to reverse the convictions of another "resident child molester." (*People* v. *Vargas* (1988) 206 Cal.App.3d 831, 842-847 [253 Cal.Rptr. 894].) In another case, however, the Fifth District, over a dissent, declined to apply the *Van Hoek* rationale where several child sexual assault convictions were reversed on other grounds. (*People* v. *Jeff* (1988) 204 Cal.App.3d 309, 339-343 [251 Cal.Rptr. 135]; cf. J. Best's dis. opn. *id.,* at pp. 345-348.)

*Van Hoek* reversed convictions on all counts. *Luna* and *Atkins* each affirmed convictions on some and reversed on other counts. The affirmed

counts involved assaults over not more than two to three-month periods or linked to a particular place. The reversed counts could have occurred over up to a year and lacked any other identifying characteristic. However, without discussion, *Luna* and *Atkins* barred retrial on the reversed counts. Although decided by the same district, *Vargas,* which reversed convictions on all counts, criticized those portions of *Luna* and *Atkins* barring retrial. Nonetheless, the *Vargas* court felt compelled to follow its earlier pronouncements, yet permitted retrial on some counts. In *Jeff,* the same district previously permitted retrial of reversed counts.

Another district distinguished *Van Hoek* and declined to apply its rationale. (See *People* v. *Sanchez* (1989) 208 Cal.App.3d 721 [256 Cal.Rptr. 449]; *People* v. *Bothuel* (1988) 205 Cal.App.3d 581, 593, fn. 14 [252 Cal.Rptr. 596].)

We choose to follow the better reasoned opinion recently issued by Division Six of this district rejecting the *Van Hoek* rationale and affirming convictions against a similar challenge. (*People* v. *Obremski* (1989) 207 Cal.App.3d 1346 [255 Cal.Rptr. 715].) As stated in *Obremski*: "*Van Hoek* is incorrect because it attempts to fit the crime to the defense instead of fitting the defense to the crime. In cases where the child molester . . . had continual . . . access to the vulnerable child, neither alibi [n]or wrongful identification is likely to be a reasonable defense. . . . Forcing the prosecution to an election in this factual situation achieves the anomalous result of subjecting to prosecution only those defendants who select victims with better memories or who are one act offenders. [¶] In resident child molester cases, the true issue is credibility. . . . Indeed, in the present case, a large part of the testimony by the defense went to discrediting the victim. . . . [¶] Since the exact times of the offenses are not material in the case before us, in that appellant did not attempt to prove an alibi and had uninterrupted access to the victim, the imprecise charges did not mislead him and violate his right to due process." (*Id.,* at pp. 1353-1354.)

Moreover, the distinction between evidence deemed sufficient to affirm some counts, and that held insufficient to sustain others, seems arbitrary. It would be as difficult to establish an alibi covering three months as one covering a year, or to defend against a single incident differentiated from dozens of others only because it occurred in a different room. The Fifth District cases wrongly assume these distinctions sufficiently significant to justify contrary results. The district's contradictory conclusions regarding whether reversed counts may be retried demonstrate further analytical uncertainty.

As in *Obremski,* appellant here denied committing any sexual assaults but admitted the victims frequently stayed with him. The defense was not

alibi or misidentification but denial coupled with an attack on the victims' credibility. Under these circumstances, any lack of specificity in tying particular attacks to specific times, dates, locations, or charges did not deny appellant due process of law.

In summary, appellant's claim is contradicted by the facts. Even if appellant's claim were factually tenable, the better reasoned authority supports its rejection and affirmance of appellant's convictions for the six crimes committed against Jason D.

## II.

■■■ Appellant's contention that the prosecutor committed prejudicial misconduct during closing argument by arguing defense counsel had a duty to create a doubt even if he believed appellant guilty is unavailing. In introducing his closing argument, the prosecutor said that defense attorneys never admit their clients' guilt but argue the existence of a doubt sufficient to justify a not guilty verdict.

This language approaches but does not reach that of Justice White's comparing the ethical obligations of law enforcement officers, including prosecutors, with those of criminal defense attorneys.[4] The prosecutor never discussed his own ethical obligations, compared them with those of defense counsel, or stated that defense counsel had to defend appellant even if he believed appellant guilty. Thus, despite appellant's contrary contention, the prosecutor did not argue that defense counsel was obligated to obscure or contradict what he knew to be the truth. In any event, while the challenged

---

[4] "Law enforcement officers have the obligation to convict the guilty and to make sure they do not convict the innocent. They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of the crime. To this extent, our so-called adversary system is not adversary at all; nor should it be. But defense counsel has no comparable obligation to ascertain or present the truth. Our system assigns him a different mission. He must be and is interested in preventing the conviction of the innocent, but, absent a voluntary plea of guilty, we also insist that he defend his client whether he is innocent or guilty. The State has the obligation to present the evidence. Defense counsel need present nothing, even if he knows what the truth is. He need not furnish any witnesses to the police, or reveal any confidences of his client, or furnish any other information to help the prosecution's case. If he can confuse a witness, even a truthful one, or make him appear at a disadvantage, unsure or indecisive, that will be his normal course. Our interest in not convicting the innocent permits counsel to put the State to its proof, to put the State's case in the worst possible light, regardless of what he thinks or knows to be the truth. Undoubtedly there are some limits which defense counsel must observe but more often than not, defense counsel will cross-examine a prosecution witness, and impeach him if he can, even if he thinks the witness is telling the truth, just as he will attempt to destroy a witness who he thinks is lying. In this respect, as part of our modified adversary system and as part of the duty imposed on the most honorable defense counsel, we countenance or require conduct which in many instances has little, if any, relation to the search for truth." (*United States* v. *Wade* (1967) 388 U.S. 218, 256-258 [18 L.Ed.2d 1149, 1174-1175, 87 S.Ct. 1926], fns. omitted.)

statements may have constituted misconduct, and certainly were ill-advised, no reversal is required. While a prosecutor's quoting Justice White in closing argument in response to personal attacks by defense counsel was found harmless error in *People* v. *Perry* (1972) 7 Cal.3d 756, 789-791 [103 Cal.Rptr. 161, 499 P.2d 129], *People* v. *Beyea* (1974) 38 Cal.App.3d 176, 196 [113 Cal.Rptr. 254], found similar responding argument proper. While a similar prosecutorial response was criticized in *People* v. *Pic'l* (1981) 114 Cal.App.3d 824, 869-872 (disapproved on other grounds in *People* v. *Kimble* (1988) 44 Cal.3d 480, 496-498 [244 Cal.Rptr. 148 [749 P.2d 803]), *Pic'l* declined to expressly label such conduct error and found any error harmless. Appellant cites no cases, nor have we found any, requiring reversal for such misconduct.[5] Appellant does not challenge the sufficiency of the evidence supporting his convictions for sexually assaulting Jason T. and Jeffrey F. Their testimony corroborates that of Jason D. The defense was presented through the testimony of appellant and his relatives, all of whom had a motive to fabricate, and was internally inconsistent.

Thus, even if the challenged argument constituted misconduct, on this record reversal is not warranted. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### III.

The contention that the case must be remanded for resentencing because the trial court relied on improper factors in imposing consecutive sentences on six counts is also unavailing. Appellant is correct that the trial court failed to articulate facts supporting, and thus incorrectly relied on, the presence of multiple victims (*People* v. *Arviso* (1988) 201 Cal.App.3d 1055, 1059-1060 [247 Cal.Rptr. 559]), cruelty (see *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 239 [182 Cal.Rptr. 406], disapproved on other grounds in *People* v. *Jones* (1988) 46 Cal.3d 585, 600 [250 Cal.Rptr. 635, 758 P.2d 1165]), and the victims' youth (*People* v. *Ginese* (1981) 121 Cal.App.3d 468, 476-479 [175 Cal.Rptr. 383]) in imposing consecutive sentences on some of the challenged counts. Respondent points out appellant was charged with committing each count against multiple victims, but fails to note those enhancements were neither submitted to the jury nor found true. Moreover, the facts respondent claims support use of cruelty and youth to impose consecutive sentences, while arguably present in the record, were not articulated or relied on by the court.

---

[5] *People* v. *Murillo* (Cal.App.) F004952, cited by appellant, was ordered depublished on November 12, 1987.

However, these errors do not compel remand. Despite appellant's contrary contention, the court considered appellant's lack of prior criminal history, the only mitigating factor presented to it, and thus did not err. (*People* v. *Hetherington* (1984) 154 Cal.App.3d 1132, 1140-1141 [201 Cal.Rptr. 756].) Appellant's other "mitigating factors", i.e., that he used no force or threats and the victims were willing participants, were not presented to the court and were advanced for the first time on appeal. The court articulated several concededly valid aggravating factors: numerous independent crimes against separate victims (Cal. Rules of Court, rule 425(a)(1), (3), and (5)); appellant took advantage of a position of trust (Cal. Rules of Court, rule 421(a)(12)); and the planning and sophistication with which the crime was carried out indicate premeditation (Cal. Rules of Court, rule 421(a)(8).) Any of these factors justified imposition of the consecutive subordinate sentences. (*People* v. *Hetherington, supra,* 154 Cal.App.3d at pp. 1142-1143; *People* v. *Bejarano* (1981) 114 Cal.App.3d 693, 705 [173 Cal.Rptr. 71].) As the court articulated several concededly valid factors supporting imposition of all the consecutive terms, and expressly considered the only mitigating factor, remand is unnecessary. (*People* v. *Arviso, supra,* 201 Cal.App.3d at pp. 1059-1060; *People* v. *Blessing* (1979) 94 Cal.App.3d 835, 837-838 [155 Cal.Rptr. 780].)

### DISPOSITION

The judgment is affirmed.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.

A petition for a rehearing was denied May 2, 1989, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 29, 1989.