[B031718. Second Dist., Div. Five. May 31, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL AVINA, Defendant and Appellant.

[No. B038350. Second Dist., Div. Five. May 31, 1989.]

In re RAUL AVINA on Habeas Corpus.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of part II.

**COUNSEL**

Joshua C. Needle for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Susan D. Martynec and Robert D. Breton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BOREN, J.**—Following a court trial, Raul Avina was convicted of two counts of committing lewd and lascivious acts upon his daughter, a child under the age of 14 (Pen. Code, § 288, subd. (a)) and two counts of incest (Pen. Code, § 285). The court also found that Avina was ineligible for probation because he had occupied a position of special trust and had committed acts of substantial sexual conduct in having sexual intercourse with his daughter. (Pen. Code, § 1203.066, subd. (a)(9).) On appeal, Avina contends that he was denied due process because the charges were too vague as to the date of each offense and the evidence was insufficient. By petition for writ of habeas corpus, which we consider in conjunction with this appeal, Avina claims that his trial counsel's assistance was constitutionally ineffective.[2] We find all the contentions unavailing. We affirm the judgment and, by a separate order, we shall deny the petition for writ of habeas corpus.

### FACTS

In 1983, Avina's oldest daughter, to whom we refer as "D.," was 13 years old and lived in a house with her mother, two younger siblings and Avina. D. had her own bedroom. Her mother slept in the master bedroom, and Avina slept in the living room.

Count one of the information alleged a lewd act which occurred "between May 1, 1983 and September 1, 1983." As to this count, D. testified that one night in "the summer of 1983" when she was 13 years old and between the seventh and eighth grades, she was awakened when she "felt something unusual." D. discovered her father naked and drunk and lying on top of her. The bottom part of the sweat suit in which she had been sleeping had been removed. Avina prevented her from getting out of bed, forced her to have sexual intercourse with him, and then left her bedroom. D. initially did not tell anyone about this incident because she was afraid of Avina, who has a violent temper and had in the past threatened his wife with a gun.

---

[2] This claim is also raised in Avina's appeal, but we address it only in the context of the petition, since all the facts in support of the claim are admittedly outside the record of the appeal and are found only in the petition.

Count two in the information alleged a lewd act which occurred "between November 1, 1983 and January 1, 1984." D. testified that in December of 1983, during the Christmas season when her boyfriend had given her a ring, she was again asleep in her bedroom when she was awakened by Avina and discovered that her sweat pants had been removed. Avina was wearing a T-shirt, and his breath smelled of alcohol. D. tried to move away and to push Avina's hand away from her, but Avina was too strong. When she tried to scream or yell, Avina put his hand over her mouth. Avina again forced her to submit to sexual intercourse.

D. was afraid to tell her mother about what had happened because she was afraid of Avina. Her parents fought constantly, and Avina had been violent with her mother. However, D. told her boyfriend and a girlfriend what Avina had done to her.

During cross-examination, D. stated that "quite a few times" during Christmas vacation periods she had gone with her mother to Mexico to visit her grandmother. Depending upon which year and how much of the vacation period was left, they stayed for different lengths of time. She could not recall which years she went to Mexico during the Christmas season.

Count three in the information alleged an act of incest which occurred "between August 15, 1984 and September 30, 1984." As to this count, D. testified that in August or September of 1984, when she was 14 years old and during a time when her half-brother had taken a trip to Texas, Avina again entered her bedroom while she was asleep and had forcible sexual intercourse with her. Avina held her legs up in a different position. D. was uncomfortable from the weight of Avina's body. The next morning, she noticed bruises on the inner part of her upper legs. She was again afraid to tell her mother what had happened.

Count four in the information alleged an act of incest which occurred "between March 15, 1986 and April 15, 1986." D. testified that in April of 1986, when she was approximately 15½ years old and at about the time she bought a fancy dress to wear to a special scholarship dance at the Bonaventure Hotel, Avina again committed an act of forcible sexual intercourse with her. D. was awakened by Avina, who was on top of her and had a strong odor of alcohol on his breath. She was in a large bed with her 10-year-old sister and attempted to scream and awaken her sister. Avina placed a pillow over D.'s mouth, and her sister, who always slept very soundly, was not awakened by the shaking of the bed frame.

In the summer of 1986, D. ran away from home. When her mother found her and asked her why she ran away, she finally told her mother about Avina's sexual attacks upon her. The mother then contacted the police.

The four incidents alleged in the information were not the only sexual attacks upon D. by Avina. Avina had repeatedly molested her for approximately three years. However, the four incidents alleged in the information were the only ones which D. remembered in detail and for which she could recall any time frames. Avina's adult son, D.'s half-brother, periodically lived at Avina's house and on approximately 100 occasions also forced her to have sexual intercourse with him from the time she was 13 until she was 16 years old.[3] D. was certain of her identification of her father and did not mistake him for her half-brother on those occasions when her father was on top of her and sexually attacked her.

In defense, Avina denied ever having sexual intercourse with D. Avina admitted that one night in 1984, he came home drunk, entered D.'s bedroom, undressed her, fondled her and then realized she was not his wife and left the room. Avina asserted an alibi as to the incident alleged in count two of the information, which D. indicated occurred in "December of 1983" during "the Christmas season" after her boyfriend had given her a ring as a "Christmas gift." Avina claimed that during the "Christmas vacation period" of 1983, his wife and children were in Mexico and were not in the house. They left for Mexico some unspecified time after the children's school vacation started, and Avina did not go with them. Avina specifically denied each of the four alleged sexual attacks on D.

At sentencing, the court imposed a total prison term of 10 years. The court observed, in part, that "This was cruel, malice [sic] conduct committed over a period of years on a helpless child of his own body" and that if there is "such a thing as death of the soul, . . . that's what that young girl suffered for years."

## I

### APPEAL

■■■ Avina alleges he was denied due process. He contends the time frames alleged in the information were so vague that he could not adequately defend against the allegations and that the evidence was rendered insufficient. Avina relies upon two cases from the Fifth District, *People* v. *Atkins* (1988) 203 Cal.App.3d 15 [249 Cal.Rptr. 863] and *People* v. *Van Hoek* (1988) 200 Cal.App.3d 811 [246 Cal.Rptr. 352]. We reject Avina's contentions, decline to follow the cited cases and also find them factually distinguishable.

---

[3] Appellant's son had previously pled guilty to one count of incest and was sentenced to state prison.

Both *Atkins* and *Van Hoek* involved what has been termed a resident child molester. The child molestation victims testified to similar and recurring sexual assaults by the defendants, who resided in the same home with the children, but the victims were unable to link specific attacks to particular times, dates, locations or charges. The child victims established so-called generic sex offenses where they related a series of identical acts which were not distinguished by any individualized characteristics. (See *People* v. *Sanchez* (1989) 208 Cal.App.3d 721, 746 [256 Cal.Rptr. 446]; *People* v. *Vargas* (1988) 206 Cal.App.3d 831, 845 [253 Cal.Rptr. 894].) While, of course, recognizing the undesirable result of insulating the most egregious child molesters from prosecution, the court in *Van Hoek* reversed the defendant's conviction, which it determined was supported only by testimony of unspecific and blurred acts of molestations. (*People* v. *Van Hoek, supra,* 200 Cal.App.3d at pp. 814, 816-818.) The court held that the defendant was denied due process and the evidence was insufficient because the defendant was "deprived of the right to mount an adequate defense and the prosecution [was] not required to meet [its] burden of proving the defendant committed a particular act on a particular and specific occasion. . . . [T]he prosecution neither charged an offense specific as to time, place or other particular, nor did it prove a specific offense with regard to any count." (*Id.* at p. 818.)

In *People* v. *Atkins, supra,* 203 Cal.App.3d 15, the defendant was charged with five counts of various sexual misconduct against his stepdaughter. The victim specifically described three acts corresponding to three of the counts. However, with regard to the other two counts, she did not specify an act with any particularity, but described each act as the same as an act about which she had previously testified. (*Id.* at pp. 18-19.) Without focusing on notice and the opportunity to formulate a defense, the court held that the failure to describe with particularity the acts supporting the latter two counts rendered the evidence insufficient and thus barred retrial. (*Id.* at p. 23.)

Other cases from the Fifth District have also addressed similar problems of proof and related issues involving jury instructions. (See *People* v. *Vargas, supra,* 206 Cal.App.3d 831; *People* v. *Luna* (1988) 204 Cal.App.3d 726 [250 Cal.Rptr. 878]; *People* v. *Jeff* (1988) 204 Cal.App.3d 309 [251 Cal.Rptr. 135].) In *People* v. *Sanchez, supra,* 208 Cal.App.3d 721, the Sixth District synthesized the general rule from Fifth District cases. As explained in *Sanchez,* even where the trial court gives an appropriate jury instruction in a resident child molester situation requiring jury unanimity as to any act upon which a guilty finding is based (CALJIC No. 17.01 or 4.71.5), "there is a violation of due process and reversible error with retrial barred if the evidence of the several acts of molestation during the relevant time period

under the charge does not present a 'distinguishing characteristic,' i.e., a specific time, date, event or other individualizing aspect. [Citations.] On the other hand, if the evidence of the molestations reveals *'any* specific act to support the charged crime,' with the giving of the unanimity instruction or under an election as to which of the acts the prosecutor is relying upon to convict, there is no due process violation and the conviction stands as supported by substantial evidence. [Citation.]" (208 Cal.App.3d at pp. 744-745, fn. omitted, italics in original.)[4]

In *Sanchez,* the Sixth District distinguished *Van Hoek* and its progeny and declined to apply its rationale to the particular facts before it. These facts did not reflect merely a generic sex offense case with testimony describing a blur of acts which was not specific as to any particular occasion. Rather, as to the time period of each pertinent charge, the evidence sufficiently specified the nature and location of the acts and the relative physical positions of the parties at the time the acts occurred. (*People* v. *Sanchez, supra,* 208 Cal.App.3d at pp. 746-747; see also *People* v. *Bothuel* (1988) 205 Cal.App.3d 581, 593, fn. 14 [252 Cal.Rptr. 596].)

This district, however, has more directly confronted and rejected the *Van Hoek* rationale. In *People* v. *Obremski* (1989) 207 Cal.App.3d 1346 [255 Cal.Rptr. 715], Division Six of the Second District held that the defendant was estopped from claiming for the first time on appeal any problem as to notice and the opportunity to formulate a defense because the defendant failed at trial to assert any "interest in presenting an alibi defense." (*Id.* at pp. 1351-1352.) The court also concluded that *Van Hoek* was incorrectly decided because in a resident child molester case "neither alibi [n]or wrongful identification is likely to be a reasonable defense," and "the true issue is credibility." (*Id.* at p. 1353.) Moreover, to the extent that the child victim is "able to testify only to a general sexual interaction with the molester, the molester himself is likely to be similarly handicapped in eliciting from his memory specific details concerning the date, time and place of his activities during the years of his residence with the victim. [It would be anomalous to prosecute] only those defendants who select victims with better memories or who are one act offenders." (*Ibid.*)

In *People* v. *Coulter* (1989) 209 Cal.App.3d 506 [257 Cal.Rptr. 391], Division One of this district likewise rejected the *Van Hoek* rationale and specifically adopted much of the reasoning in *Obremski*. In both cases, the defendants did not offer as a defense either alibi or misidentification, but denied committing any sexual assaults and attacked the credibility of the

---

[4] We are, of course, not confronted in this case with the unanimity issue because the matter was tried by the court without a jury.

victims. *Coulter* concluded that under such circumstances, even if there was a lack of specificity in tying a particular attack to specific times, dates, locations or charges, the defendant would not be denied due process. (*People v. Coulter, supra,* 209 Cal.App.3d at pp. 513-514.)

While we also reject the *Van Hoek* due process and lack of specificity analysis and adopt much of the reasoning in *Obremski,* the factual situation in the present case is somewhat different. Unlike in *Obremski* and *Coulter,* Avina did in some way suggest the possibility of mistaken identification. Avina's counsel unsuccessfully attempted to intimate during cross-examination of D. that she might have mistaken Avina's son, who was also molesting her, for Avina. However, Avina's son was approximately five inches taller than Avina, and D. was certain of her identification of her own father. Although counsel astutely attempted to explore the possibility of confusion as to identity, it quickly evaporated as a real issue.

The situation in the present case also varies from that in *Obremski* and *Coulter* because Avina did proffer an alibi defense as to one of the four counts, count two. Although Avina could not specify the day D. and her mother purportedly left for Mexico during the 1983 Christmas period, he claimed that they had left to visit relatives during that time of the year four or five times since 1981. Avina speculated that they often left after the start of the school vacation and on a Saturday or a Monday and returned after Christmas and sometimes after New Year's Day. During cross-examination, D. confirmed that she often went to Mexico with her mother during the Christmas period and stayed for different lengths of time, but she could not recall during which years she went to Mexico for such holiday visits. Accordingly, the facts reveal that Avina's problem was not that he had a potential alibi but for the fact that he did not know the date of the offense; rather, the real problem with Avina's alibi was that he was not certain, not just of the date of the offense, but also of the date of the alibi.

Such lack of specificity in the enfeebled alibi testimony is ironic in view of Avina's argument, which is premised on a lack of specificity in the prosecution's case. As previously noted and as aptly observed in *Obremski,* where the child victim is hampered in the ability to testify in great detail, particularly with the passage of time, "the molester himself is likely to be similarly handicapped in eliciting from his memory specific details concerning the date, time and place of his activities during the years of his residence with the victim." (*People v. Obremski, supra,* 207 Cal.App.3d at p. 1353.)

"[T]he true issue is credibility." (207 Cal.App.3d at p. 1353.) The bottom line is Avina's denial of any acts of sexual intercourse with D. We find that D.'s testimony was not a mere "blur of acts" (*People v. Van Hoek, supra,*

200 Cal.App.3d at p. 817) or "a general, and customarily abbreviated, recitation of what happened on a continuing basis" (*People* v. *Luna, supra,* 204 Cal.App.3d 726, 748), but was sufficiently specific and detailed in all respects. Avina's assertion that D.'s testimony lacked such specificity and was vague and thus unreliable constitutes an argument regarding D.'s credibility better aimed at the trier of fact.

Even an assumption (which we do not make) that D.'s testimony lacked sufficient specificity in tying particular sexual attacks to specific times, locations or charges would not negate the fact that each element of each of the charged offenses was supported by substantial evidence. ■ An appellate court may not reweigh the evidence and substitute its judgment for that of the fact finder at trial. (See *People* v. *Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110].) ■ Consistent with the customary standard of appellate review, our review of the evidence in the light most favorable to the prosecution leads to the ineluctable conclusion that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People* v. *Trevino* (1985) 39 Cal.3d 667, 695 [217 Cal.Rptr. 652, 704 P.2d 719].) No higher standard of review of the facts, either at trial or on appeal, is required by the nature of the offense. (See *People* v. *Scott* (1978) 21 Cal.3d 284, 296 [228 Cal.Rptr. 228, 721 P.2d 110]; *People* v. *Thomas* (1978) 20 Cal.3d 457, 471 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 883 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845].)

■ Courts should not require that a child victim of sexual abuse be able to testify about the time of the offense with more precision than the victims of other types of crimes. The nature of the crime should not dictate a different evidentiary burden. For example, house burglaries often occur at a time when residents are away from home on vacation. If the elements of the crime of burglary and the identity of the burglar have been sufficiently established, it is of no consequence that the burglary victim is unable to relate exactly when during the course of a perhaps lengthy vacation the burglary occurred. We can find no valid reason to subject a victim of child molestation to a standard stricter than that borne by victims of burglaries or other crimes.

It is also well-established that the accusatory pleading need not specify the exact date of an offense, unless time is a material ingredient of the offense. (Pen. Code, § 955; *People* v. *Wrigley* (1968) 69 Cal.2d 149, 155 [70 Cal.Rptr. 116, 443 P.2d 580]; *People* v. *Obremski, supra,* 207 Cal.App.3d at p. 1354.) ■ Moreover, although an accused is constitutionally entitled to notice of the specific charges, even an "information which charges a criminal defendant with multiple counts of the same offense does not violate

due process so long as (1) the information informs defendant of the nature of the conduct with which he is accused and (2) the evidence presented at the preliminary hearing informs him of the particulars of the offenses which the prosecution may prove at trial. [Citations.]" (*People* v. *Jeff, supra,* 204 Cal.App.3d 309, 341-342.) The role of the information is important but limited to notice of the kind and number of offenses. The heart of the due process notice to which the defendant is entitled is the preliminary hearing during which the time, place and circumstances of the charged offenses are ferreted out. (*Ibid.*)

 Even if Avina had raised a timely issue at trial as to the purported vagueness in the information concerning the time frames given for the charged offenses (204 Cal.App.3d at p. 341-342; Pen. Code, §§ 1004, subd. 2, 1012), greater specificity would not have enhanced his ability to defend against the charges. Avina's defense, even as to count two, was not based principally on his alibi (an alibi for which he himself could not even establish a firm time frame). Rather, it rested on the purported credibility of his personal denial of any sexual intercourse with D. at any time. Hence, Avina cannot show any substantial prejudice arising out of purported vagueness in the information and in the evidence concerning chronology. And his right to due process was not violated.

II*

. . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.†

Lucas, P. J., and Rowen, J.,‡ concurred.

Appellant's petition for review by the Supreme Court was denied August 30, 1989.

---

* See footnote, *ante,* page 48.
† The petition for writ of habeas corpus will be denied by separate order dated June 30, 1989.
‡ Assigned by the Chairperson of the Judicial Council.