Filed 5/10/16  P. v. Reyes CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL REYES,<br><br>    Defendant and Appellant. | H041629<br>(San Benito County<br>Super. Ct. No. CR1000425) |

**STATEMENT OF THE CASE**

A jury convicted defendant Michael Reyes of one count of forcible sexual penetration by a foreign object (Pen. Code, § 289, subd. (a)(1); count 2),[1] five counts of forcible lewd conduct on a child under the age of 14 (§ 288, subd. (b)(1); counts 3, 5, 7, 9, and 11), 12 counts of forcible rape (§ 261, subd. (a)(2); counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, 24, and 26), three counts of forcible oral copulation (§ 288a, subd. (c)(2); counts 12, 15, and 23), four counts of lewd conduct on a 14-year-old or 15-year-old child (§ 288, subd. (c)(1); counts 18, 20, 22, and 25), and two counts of aggravated sexual assault on a child (§ 269, subds. (a)(1) & (a)(5); counts 27 and 28).  The trial court sentenced defendant to a term of 30 years to life plus a consecutive term of 95 years 8 months.

---

[1]  Subsequent unspecified statutory references are to the Penal Code.

Defendant appealed from the judgment of conviction. This court concluded that there was insufficient evidence of force or duress to support counts 2-17, 19, 21, 23, 24, and 26-28. This court additionally concluded that defendant was denied his right to discharge retained counsel at the sentencing hearing. Given these conclusions, this court issued the following disposition order: "The judgment is reversed. We remand to the trial court with the following directions: (1) strike the aggravated sexual assault on a child convictions in counts 27 and 28; (2) reduce the forcible lewd conduct convictions in counts 3, 5, 7, 9 and 11 to non-forcible lewd conduct in violation of section 288, subdivision (a); (3) reduce the forcible rape convictions in counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, and 24 to unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (d); (4) reduce the forcible rape conviction in count 26 to unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (c); (5) reduce the forcible sexual penetration by a foreign object conviction in count 2 to non-forcible sexual penetration by a foreign object in violation of section 289, subdivision (j); (6) reduce the forcible oral copulation convictions in counts 12, 15, and 23 to non-forcible oral copulation in violation of section 288a, subdivision (b)(2); (7) conduct a new sentencing hearing for all counts with defendant afforded the opportunity to be represented by a new attorney." (*People v. Reyes* (Oct. 28, 2013, H036867) [nonpub. opn.].)

On remand, the trial court held a resentencing hearing and sentenced defendant to a total prison term of 30 years 4 months. The trial court calculated this sentence in the following manner: eight years for the section 289, subdivision (j) conviction in count 2; 11 consecutive one-year terms for the section 261.5, subdivision (d) convictions in counts 4, 6, 8, 10, 13, 14, 16, 17, 19, 21, and 24; four consecutive two-year terms for the section 288, subdivision (a) convictions counts 5, 7, 9 and 11; three consecutive eight-month terms for the section 288a, subdivision (b)(2) convictions in counts 12, 15, and 23; a

2

consecutive eight-month term for the section 288 subdivision (c)(1) conviction in count 25; and a consecutive eight-month term for the section 261.5, subdivision (c) conviction in count 26. The trial court stayed the term on count 3 pursuant to section 654, and it imposed concurrent terms for counts 18, 20, and 22. The trial court imposed a $6,300 restitution fine (§ 1202.4, subd. (b)) and imposed and suspended a $6,300 parole revocation restitution fine (§ 1202.45).

Defendant now appeals from the judgment entered following the resentencing hearing. On appeal, he contends that defense counsel was ineffective in failing to object to the trial court's stated reason for imposing consecutive sentences. He additionally contends that the restitution fine and the parole revocation restitution fine violate double jeopardy principles. As set forth below, we will reduce the restitution fine and the parole revocation restitution fine, and we will affirm the judgment as modified.

### EVIDENCE PRESENTED AT TRIAL[2]

Defendant dated Jane Doe's mother for several years. When Doe was seven or eight years old, defendant moved in with Doe and her mother. Defendant lived with Doe and her mother "[o]ff and on" for approximately nine years. Over the course of those years, they moved frequently and lived together in several different houses.

Defendant had sexual contact with Doe from the time Doe was nine years old to the time she was 16 years old.[3] Described below are the sex acts that occurred at each of the houses that defendant shared with Doe and her mother.

---

[2] Our recitation of the evidence presented at trial is derived from the statement of facts presented in our previous opinion, *People v. Reyes, supra,* H036867 [nonpub. opn.].

[3] Doe was 18 years old at the time of trial, and defendant was 56 years old at the time of trial.

3

*Counts 2, 3, and 27:  San Benito Street in Hollister*

When Doe was nine years old, defendant approached Doe in the hallway of their house on San Benito Street in Hollister.  He placed his finger in her vagina.  Doe "jumped up because it hurt."  Defendant then tried to reinsert his finger into Doe's vagina.

Doe told her mother that defendant had "touched" her.  Doe's mother confronted defendant with the information, and defendant said that he and Doe had been wrestling and playing around.

*Counts 4-11 and 28:  Howard Court in Hollister*

When Doe was 12 years old, she and defendant were in the kitchen at their home on Howard Court in Hollister, and defendant told her that he "wanted to show [her] how it was done."  Defendant said that "it was just going to happen that one time."  Defendant then had sexual intercourse with Doe in her mother's bedroom.  Doe experienced pain during the intercourse.  Defendant was aware that Doe was in pain, and he commented that "it was too tight."  Doe "felt comfortable" after the intercourse because defendant assured her that it would happen only that one time.

On Doe's 13th birthday, defendant asked Doe if she "wanted to do it."  Doe said no.  Defendant "kept asking."  Doe "just said okay," and they "ended up" having sexual intercourse.

While living at the house on Howard Court, defendant had sexual intercourse with Doe more than 20 times.  The intercourse always occurred while Doe's mother was at work.

*Counts 12-16:  Pinot Noir Court in Los Banos*

When Doe was 14 years old, defendant, Doe, and Doe's mother moved into a house on Pinot Noir Court in Los Banos.  While living on Pinot Noir Court, defendant "would want to have sex" with Doe before she went to school.  Defendant would call

Doe's name, and Doe "already knew he wanted to have sex." Defendant would tell Doe to come into one of the bedrooms, and defendant and Doe "would have sex."

Defendant, Doe, and Doe's mother lived on Pinot Noir Court for seven months. While living on Pinot Noir Court, defendant and Doe had sexual intercourse approximately once a week. On one occasion when they had sexual intercourse, Doe put her mouth on defendant's "private area." On other occasions when they had sexual intercourse, defendant put his mouth on Doe's "private area."

After defendant had sexual intercourse with Doe, Doe would act like it had not happened. Doe explained that she did not want to think about defendant.

Doe felt uncomfortable when she was alone with defendant at the house on Pinot Noir Court. Doe explained that she knew defendant would want to have sexual intercourse if she was alone with defendant.

### Counts 17-26: East First Street in Morgan Hill

When Doe was 15 years old, defendant, Doe, and Doe's mother moved into a house on East First Street in Morgan Hill. They lived in that house for one and a half years, and defendant and Doe had sexual intercourse one to two times a week while living there.

Doe explained that defendant would call her into one of the house's rooms, and she and defendant "would have sex." On many of the occasions when they had sexual intercourse, defendant would also perform oral sex on Doe. Defendant stopped having sexual intercourse with Doe around the time she turned 16 years old.

Doe testified that she did not like being alone with defendant during the time they lived on East First Street. Doe explained that defendant made her feel uncomfortable when they were alone together.

*Facts Pertaining to All Counts*

Before having sexual intercourse with Doe, defendant would always kiss her and touch her breasts. On some occasions, Doe "would get on top of him" during the intercourse.

Doe always refused to have sexual intercourse in her own bedroom. Doe did everything she could to prevent the intercourse from happening in her bedroom.

Sometimes Doe told defendant that she did not want to have sexual intercourse with him. When Doe refused to have sexual intercourse with him, defendant "would get mad" and would not talk to her for a few days. Doe "cared for" defendant, and she did not like it when he would not talk to her.

Doe testified that she and defendant "had good times" together. She explained that she liked to wrestle with defendant. She also enjoyed going on motorcycle rides with defendant.

Doe did not fear defendant. Defendant was protective of Doe, and he told people that he was her father.

Defendant's relationship with Doe's mother was "[o]ff and on" and "[v]ery unstable." Defendant would move out of the houses he shared with Doe and her mother when he "was caught cheating" with other women.

*Doe's Letter to her Mother and the Police Investigation*

When Doe was 17 years old, Doe's mother discovered that Doe was involved in a lesbian relationship. Doe's mother did not like Doe's sexual preference, and she did not talk to Doe for a few days. In order to rehabilitate her relationship with her mother, Doe wrote her mother a letter. In the letter, Doe stated that she "turned to girls" because defendant had molested her. After reading the letter, Doe's mother contacted the police.

The police arranged for Doe to place a recorded phone call to defendant. A tape of the call was played for the jury. During the call, Doe told defendant that she was

6

"more comfortable with girls" because of "what happened between" her and defendant. Defendant responded, "Why? You think all boys and men are like that?" Defendant also stated, "[I]t happened to me when I was a kid." Doe asked, "If you knew it hurt so bad, why—why did you do it to somebody else?" Defendant responded, "I think it was just— it was just a sexual thing and—that's exactly what it was." Defendant continued, "I know . . . we've done some stupid things, but I am sorry. . . . I love you to death. And, hey, I mean it. When you see me the way I am right now, it's pure[,] natural[,] just plain, clean love."

### Expert Testimony

An expert witness testified regarding Child Sexual Abuse Accommodation Syndrome (CSAAS). CSAAS is a "description of unexpected conditions and situations that typically occur in child sexual abuse cases that often are in conflict with many people's preconceived ideas about child sexual abuse." The expert testified that children who have been victims of sexual abuse often wait to report the crime and continue to interact with the offender. While children are experiencing sexual abuse, they frequently "act as if nothing is wrong." A "triggering event," such as a "heated family argument," will often prompt an abused child to report the molestation.

### Defense Evidence

Defendant's daughter, Janelle Reyes, testified that she and Doe were very close friends. Ms. Reyes frequently saw defendant and Doe interact. Ms. Reyes never had the impression that Doe did not want to be alone with defendant. Doe never told Ms. Reyes that she was afraid of defendant.

Defendant's brother, Frank Reyes, also testified for the defense. Mr. Reyes testified that he and defendant had remodeled a home owned by defendant and Doe's mother.

7

The defense theory was that Doe fabricated the allegation of child molestation in response to her mother's negative reaction to her lesbian relationship, and that Doe's mother reported the molestation allegation in order to take advantage of defendant's improvements to the house they owned together.

DISCUSSION

## I. *Defense Counsel's Failure to Object to the Trial Court's Stated Reason for Imposing Consecutive Terms*

Defendant contends that the judgment must be reversed because defense counsel rendered ineffective assistance in failing to object to the trial court's stated reason for imposing consecutive sentences. Specifically, defendant asserts that counsel was ineffective because the trial court's stated reason for imposing 20 consecutive terms—the separate nature of each act—was improper given that "the accusatory pleading sets forth twelve distinct episodes of criminal conduct." Defendant emphasizes that the trial court was required to impose concurrent terms for the offenses within each "episode," resulting in one consecutive term for each "episode."

### A. *Background*

At the resentencing hearing, the prosecutor and defense counsel presented arguments. The prosecutor argued for numerous consecutive sentences. Defense counsel argued that many of defendant's offenses were "same occasion" crimes subject to concurrent sentencing. Defense counsel asserted that there were "11 different instances" of criminal sexual conduct, which required the trial court to impose concurrent terms for the offenses within each "instance."

Following the parties' arguments, the trial court noted that it had read "all of the transcript of the trial." The trial court then sentenced defendant. The trial court imposed most of the terms consecutively, including many within each "instance" described by defense counsel. Count 4 was the first count upon which the trial court imposed a

8

consecutive term.  When it imposed the consecutive term for that count, the trial court explained:  "The consecutive imposition is based on the separate nature of the act." Thereafter, for each count upon which the trial court imposed a consecutive term, the trial court explained that the consecutive imposition was based on the "separate nature of the act," "the nature of the act being separate," or the "separate nature of the crime." Defense counsel never objected to the trial court's stated rationale for imposing consecutive terms.

### B.  *Legal Principles*

#### 1.  *Ineffective Assistance of Counsel*

The defendant bears the burden of proving ineffective assistance of counsel. (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.)  "To prevail on an ineffective assistance of counsel claim, appellant must prove two elements:  (1) trial counsel's deficient performance and (2) prejudice as a result of that performance."  (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

Deficient performance is established "if the record demonstrates that counsel's performance fell below an objective standard of reasonableness under the prevailing norms of practice."  (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.)  Prejudice is established if "there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings."  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra,* 466 U.S. at p. 694.)

The United States Supreme Court has explained:  "The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  (*Strickland, supra,* 466 U.S. at p. 697.)

9

## 2. *Consecutive Sentences*

"Section 669 grants the trial court broad discretion to impose consecutive sentences when a person is convicted of two or more crimes." (*People v. Shaw* (2004) 122 Cal.App.4th 453, 458.)

The trial court is required to "state the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).) The imposition of a consecutive term "represents a sentencing choice" for which the trial court must state reasons. (*People v. Coelho* (2001) 89 Cal.App.4th 861, 886 (*Coelho*).)

Rule 4.425 of the California Rules of Court[4] "sets forth the criteria affecting the decision to impose consecutive rather than concurrent terms." (*Coelho, supra,* 89 Cal.App.4th at p. 886.) Those criteria include whether or not 1) the "crimes and their objectives were predominantly independent of each other," 2) the "crimes involved separate acts of violence or threats of violence," or 3) the "crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Rule 4.425(a).) Only a single aggravating factor is required to impose consecutive terms. (*People v. Osband* (1996)13 Cal.4th 622, 728-729; *People v. Coulter* (1989) 209 Cal.App.3d 506, 516.) The factors enumerated in rule 4.425 "reflect a policy that greater culpability warrants consecutive terms." (*Coelho, supra,* 89 Cal.App.4th at p. 888.)

When a defendant commits multiple sex crimes on a single occasion, a trial court may properly conclude that those crimes and their objectives were predominately independent of each other for purposes of rule 4.425. (See *Coelho, supra,* 89 Cal.App.4th at pp. 886-888.) Although the commission of multiple sex crimes on a single occasion reflects a general objective of sexual gratification, "we do not believe that

---

[4] Subsequent unspecified rule references are to the California Rules of Court.

such a broad view of a perpetrator's objective should invariably determine whether the objectives of numerous sex crimes were predominantly independent of each other." (*Id.* at p. 887.) Thus, the commission of multiple sex crimes may reflect separate and distinct objectives, namely "to achieve different forms of sexual gratification." (*Id.* at p. 888.) The " 'proper view [is] to recognize that a "defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." ' " (*Ibid.*) Because different sex acts cause a victim to suffer differing forms of violation, "a defendant who decides to commit different types of sexual acts—e.g., digital penetration, oral copulation, and sodomy—may reasonably be deemed more culpable than a person who repeats one of those acts three times, perhaps in rapid succession without much thought." (*Ibid.*) Where the defendant had "the victim masturbate him and then digitally penetrat[ed] her," a trial court properly concluded that the crimes and their objectives were predominately independent of each other under rule 4.425. (*Id.* at p. 887.)

### C. *Defendant has Failed to Show Ineffective Assistance of Counsel*

Defendant's claim of ineffective assistance is premised on the theory that the trial court lacked authority to impose consecutive sentences for sex offenses that occurred on the same occasion. Contrary to defendant's claim, the trial court had authority to impose consecutive sentences for sex offenses committed on the same occasion.

Under rule 4.425(a)(1), consecutive sentencing is appropriate if the "crimes and their objectives were predominantly independent of each other," even if the crimes occurred on the same occasion. (Rule 4.425(a)(1); see *Coelho, supra,* 89 Cal.App.4th at pp. 886-888.) The trial court's stated reason for sentencing defendant to consecutive terms—the separate nature of each act—appears to have been a reference to rule 4.425(a)(1). Moreover, the record shows that defendant's crimes and their objectives were in fact predominately independent of each other. As defendant notes, each of the

11

"episodes of criminal conduct" involved "acts of statutory rape and lewd touching, or various combinations of these acts with oral copulation." Defendant himself describes the lewd touching within each "episode" as "separate acts of kissing and touching of the breasts" that occurred in addition to the statutory rape and oral copulation. Given that defendant committed separate, distinct sex acts within each "episode," we do not believe that it was improper for the trial court to conclude that the crimes within each "episode" were predominately independent of each other. (See *Coelho, supra,* 89 Cal.App.4th at p. 887 [where the defendant committed two different types of sex acts, those acts were predominately independent of each other].) The trial court also could have properly concluded that the crimes within each "episode" had predominately different objectives. Although defendant contends that the crimes within each "episode" all involved "sexual" intent, we will not accept such a broad view of defendant's intent. (See *id.* at p. 887 [rejecting the objective of "sexual gratification" as overly "broad".) Because defendant engaged in different types of sexual conduct during each "episode," the trial court could have properly concluded that defendant intended to achieve a different form of sexual gratification for each sex crime committed within each "episode." Thus, we must conclude that the trial court had authority to impose consecutive sentences under rule 4.425(a)(1).

Because the trial court had authority to impose consecutive sentences under rule 4.425(a)(1), defendant's claim of ineffective assistance necessarily fails. To succeed on his claim, defendant must demonstrate a reasonable probability that he would have obtained a more favorable result absent counsel's shortcomings. Given that the trial court's stated reason for imposing consecutive terms appears to have been a reference to its proper authority under rule 4.425(a)(1), there is not a reasonable probability that defendant would have received a lesser sentence if counsel had objected to the trial

12

court's stated reason for imposing consecutive terms.  We therefore cannot reverse due to ineffective assistance of counsel.

We finally note that the trial court's announcement of its reasoning for consecutive sentencing was very far from the best practice.  We also note that defense counsel's argument in support of concurrent sentencing was difficult to understand.  Given, however, that defendant would not have obtained a better result if defense counsel had objected to the trial court's stated reason for imposing consecutive sentences, defendant's ineffective assistance claim fails.

## II. *The Restitution Fine and the Parole Revocation Restitution Fine*

Defendant argues that the $6,300 restitution fine and the $6,300 parole revocation restitution fine violate double jeopardy principles, and he urges this court to reduce them. He contends that each of the fines must be reduced to $5,400, the amount set for those fines at his original sentencing hearing.  The Attorney General concedes that the fines may be reduced.  (See *People v. Hanson* (2000) 23 Cal.4th 355, 357 [an increased restitution fine following a successful appeal violates double jeopardy protections].)  We accept the concession.  We will reduce the restitution fine to $5,400, and we will reduce the parole revocation restitution fine to $5,400.

**DISPOSITION**

The $6,300 restitution fine (§ 1202.4, subd. (b)) is reduced to $5,400, and the $6,300 parole revocation restitution fine (§ 1202.45) is reduced to $5,400.  As so modified, the judgment is affirmed.

_____
                           RUSHING, P.J.


WE CONCUR:




_____
           MÁRQUEZ, J.




_____
           GROVER, J.