[No. F008738. Fifth Dist. July 25, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY DORLUS ATKINS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Joseph C. Gasperetti, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jane K. Kirkland and Susan J. Orton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BALLANTYNE, J.**—Defendant, Tony Atkins, appeals following his jury trial which resulted in his conviction for five sex crimes arising out of the sexual molestation of his stepdaughter, N. The jury took approximately 20 minutes to reach their verdict. The court denied defendant's motion for a new trial based on jury misconduct and a motion requesting disclosure of jurors' addresses and/or phone numbers.

FACTS

Defendant was the stepfather of the victim, N. He lived with N. and her mother from the time she was six years old. N. testified to a continual pattern of sexual abuse. The five counts of sexual abuse defendant was found guilty of occurred some time after March 2, 1985, when the family moved to Coarsegold.

The case essentially involved a credibility contest between defendant and N. N.'s credibility was bolstered by her mother who testified that in Atascadero, prior to their move to Coarsegold, she walked into the room and

saw defendant hovering over N. in a "push-up" position. When she asked, "What the hell is going on?" defendant moved away and said, "I know what it looks like. I know what you are thinking." Defendant denied any wrongdoing and N. said nothing was wrong. The mother told N. that if he ever molested her she would kill him. Linda Ship, a registered nurse, testified that she aided in an examination of N. and N.'s hymen was not intact.

Count I alleged that in 1985 defendant committed a lewd and lascivious act against a minor under the age of 14 in violation of Penal Code section 288, subdivision (a). As to this count, N. testified that within the first two weeks after moving to Coarsegold defendant kissed her breasts and mouth and touched her vagina and breasts. This occurred before N.'s 14th birthday on June 13, 1985.

Count II alleged that in 1985 defendant committed an act of oral copulation upon N. in violation of Penal Code section 288a, subdivision (b)(l). N. testified that an act of oral copulation occurred at least once prior to June 13, 1985. When being questioned regarding an oral copulation which occurred in 1986, N. responded that an act of oral copulation occurred also in 1985. Other than this testimony, N. did not specify the act of oral copulation with any particularity.

Count III alleged that in 1986 defendant engaged in an act of oral copulation with N. in violation of Penal Code section 288a, subdivision (b)(l). N. recollected a particular incident in 1986 when defendant came into the living room in the evening when it was getting dark. He took N.'s pants off and put his mouth on her vagina. She said she did not want it, and he said it would not hurt and to just relax. No one else was home at the time except N.'s younger sister who was in her room when the incident occurred.

Count IV alleged that in 1985 defendant engaged in an act of sexual intercourse with a minor, N., in violation of Penal Code section 261.5. N. testified that she remembered a particular incident in the spring of 1985. Defendant came into the living room from the kitchen in the afternoon. N. was on the couch. Defendant said, "You want to play?" and took N.'s shorts off. N. tried to pull her shorts up but defendant prevented her. He kissed and touched her. Her mother was gone at the time. N. also testified to another act of sexual intercourse in the spring of 1985. N. was in the living room, lying down on the couch watching television. Defendant came in and told her to sit on him. She did and he started touching her. He told her to lie down. Defendant tried to take off N.'s "jammies." She tried to pull them back up. He told her to relax and that it would not hurt. N. said she did not want to do it. He put his penis in her and ejaculated. She told him it hurt and he kept doing it; then he stopped.

Count V was identical to count IV, except it alleged that the act occurred in 1986. N. described an incident in 1986 when her stepfather came into her bedroom, got on top of her and said he was going to have sex with her. She said no and ran into the bathroom. He opened the door and slapped her. N. did not testify that they had intercourse on this occasion. She did testify that defendant had intercourse with her after June 13, 1985. N. testified she had intercourse with defendant 10 to 15 times in Coarsegold. She did not testify to a particular act of sexual intercourse occurring in 1986.

N. also describes several other incidents involving sexual touching.

## DISCUSSION

## I.

### DID THE PROSECUTOR FAIL TO MEET HIS BURDEN OF PROOF ON COUNTS II AND V DUE TO THE LACK OF ANY SPECIFIC EVIDENCE AS TO A PARTICULAR ACT?

As previously set forth, N. testified with particularity to specific incidents to support counts I, III and IV. We are concerned here with the sufficiency of N.'s testimony to support defendant's convictions on counts II and V. As to count II, other than N.'s statement that an act of oral copulation took place in 1985, there was absolutely no testimony specifying with any detail the particular act which would support this count. Count V is even more troubling. Not only did N. not testify to a particular act of sexual intercourse occurring in 1986, testimony regarding sexual intercourse in 1986 was virtually nonexistent. As we shall discuss, the prosecutor did not meet his burden to prove a specific offense with regard to counts II and V. Such a failure results in our finding that there is insufficient evidence to support these counts, and the judgment must be reversed as to these counts with retrial barred.

The "resident child molester"[1] cases pose perplexing questions. They involve two very important, yet somewhat conflicting, considerations. One overriding concern is that a child who has been molested on a regular basis and in a consistent manner might not have a meaningful reference point of time or detail by which to distinguish one specific act from another. The concern is that this problem will be exacerbated the more frequent and repetitive the molestation and the younger the victim. Thus, the prosecu-

---

[1] This term has been coined to apply to a person who either resides in the same home with the minor or has unchecked access to the child and repeatedly sexually molests the child over a prolonged period of time.

tion's ability to establish one or more specific acts via the testimony of the minor victim decreases. Since minor children are usually molested outside the presence of witnesses and many of these acts leave no permanent physical evidence, the testimony of the minor victim may be the only evidence on which the prosecution can base its case. To render such testimony inadequate as a matter of law under circumstances like those here under discussion could effectively insulate the most egregious child molesters from prosecution.

The other consideration is predicated upon fundamental notions of due process which were first articulated by our Supreme Court in two 1901 decisions, *People* v. *Castro* (1901) 133 Cal. 11 [65 P. 13] and *People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323]. In both cases the defendant was charged with a single act of rape involving a young victim under the age of consent, and the victims each testified that there were multiple acts of sexual intercourse extending over a period of several months. In reversing the conviction in *Castro,* the Supreme Court stated: "Under the *instructions* given to the jury in the case at bar, the defendant should have been convicted, if any one of the various acts of intercourse sworn to by the prosecutrix was established beyond a reasonable doubt; but, certainly, the defendant was not called upon to defend himself against all of these respective acts of intercourse, extending through a period of several months. The information only charged one act, and upon that allegation the case must stand or fall. Possibly, any one of the acts sworn to by the prosecutrix could have been selected by the state as the act charged in the pleading, but the entire four acts could not be so selected. The state, at the commencement of the trial, should have been required to select the particular act upon which it relied to make good the allegation of the information. This was not done; and even conceding that the failure to make such election at that time did not constitute error because of the want of demand upon the part of the defendant to make the election, still, when the case went to the jury, the court, in some form, should have directed their minds to the particular act of intercourse which it was incumbent upon the state to establish by the evidence, before a verdict of guilty could be returned against the defendant. This was not done." (*People* v. *Castro, supra,* 133 Cal. at pp. 12-13.)

Also, in reversing the conviction in *Williams,* the Supreme Court held: "Each of these acts was a separate offense, and the defendant could be tried for either, and separately for each of them. The jury were not even told that they must all agree that some specifically described act had been performed. A verdict of guilty could have been rendered under such an instruction, although no two jurors were convinced beyond a reasonable doubt, or at all, of the truth of the charge, as to any one of these separate offenses. Even worse than that was possible. As to every specific offense which there was

an attempt to prove, and which could be met by proof, the defendant may have established his defense, and yet upon the general evidence of continuous crime, which, in the nature of things, he could only meet by his personal denial, he may have been convicted. And how could he defend when he was not informed as to what particular offense, out of hundreds testified to by the prosecutrix, he was to be tried? Such a trial, upon a charge so indefinite as to circumstance of time or place, or any particular, except by the general designation, would be a judicial farce, if it were not something a great deal worse." (*People* v. *Williams, supra,* 133 Cal. at p. 168.)

Many of the child molester cases have been decided based on the "either/or" rule which was recently stated as follows: "Emerging from recent cases dealing with the problems arising when a crime is charged and the evidence describes several acts, any one of which could constitute the crime charged, 'is the so-called "either/or" rule: . . . *either* the prosecution must select the specific act relied upon to prove the charge *or* the jury must be instructed in the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act. [Citations.]' [Citation.]" (*People* v. *Callan* (1985) 174 Cal.App.3d 1101, 1111, fn. omitted [220 Cal.Rptr. 339].)

While the "either/or" rule as stated above will cure a failure of election by the prosecution in the usual case where evidence of several specific acts is presented, any one of which could constitute the crime charged, the rule can have no application to counts where there is a failure to present evidence of *any* specific act to support the charged crime. Where, as here, the evidence is that many of such acts were committed over an extended period of time yet there is no testimony of a specific act, it would be impossible for the prosecution to "select the specific act relied upon to prove the charge" and equally impossible for the jury to "unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act." (*Ibid.*) As stated in *People* v. *Williams, supra,* 133 Cal. 165, 168, "Such a trial, upon a charge so indefinite as to circumstance of time or place, or any particular, except by the general designation, would be a judicial farce, if it were not something a great deal worse." Thus, the problem is not one of jury unanimity or election by the prosecution. It is instead a due process problem which cannot be cured by an election or a unanimity instruction. Again, quoting from *Williams:* "In this case, as well as in any other, the prosecution must charge a specific offense, and the conviction, if one is had, must depend upon the proof of that offense alone. Other incidents are important only as tending to prove the *one* specific offense for the alleged commission of which defendant is on trial.

". . . A defendant . . . has a right to demand that the charge against him shall be stated in ordinary and concise language, that he may know upon what specific charge he is to be tried, so that he may prepare his defense. Practically, that is not done in these few anomalous cases, where any number of separate offenses may be proven, although the defendant is being tried for the commission of only one." (*People* v. *Williams, supra,* 133 Cal. at pp. 168-169.)

■ Implicit in the cases requiring specificity of charges and the charges being supported by specific testimony given at trial is the fundamental due process rule, steeped in antiquity, that the prosecution must prove a specific act and the 12 jurors must agree on 1 specific act.

The case of *People* v. *Creighton* (1976) 57 Cal.App.3d 314 [129 Cal.Rptr. 249] (disapproved on other grounds in *People* v. *Thomas* (1978) 20 Cal.3d 457, 468 [143 Cal.Rptr. 215, 573 P.2d 433]) is on point. In *Creighton,* defendant was found guilty of a lewd and lascivious act upon Loren L. occurring between October 6, 1972, and October 6, 1973. Loren alleged that she and defendant had had sex numerous times. She specified one date on which this occurred. The particular occasion was the subject of another count; the jury found defendant not guilty of this count, presumably because an expert testified that it could not have occurred on this date.

On appeal, defendant asserted that the trial court erred in failing to grant the defense motion for acquittal. The appellate court agreed.

"There is in this case substantial evidence of crimes before the trier of fact. What is not there is evidence as to an individual, specific crime. All the elements were there except time, which is not a key factor in the case, and a specific incident. . . . [I]t is not reasonable to believe that the jurors could have, with the evidence available, singled out any one act or incident on which to convict the defendant. For this reason alone it would be necessary to reverse. This is not due to failure to prove that an act occurred on a specific date or time, rather there is a failure to prove any one act within the statute of limitations (Pen. Code, § 800). The evidence was too general to support a verdict even though that general evidence was, in its bulk, substantial. There is no possible way of singling out one individual act from among those claimed and saying there is substantial evidence to prove that act." (*Id.* at pp. 321-322.)

We too are deeply concerned with the resident child molester and would like very much for each of them to be brought to justice for their appalling behavior. But, this concern should not cloud the issue now before this court, which is that these types of cases, where the victim's unspecific testimony is

virtually uncorroborated, proceed in such a manner that the defendant's rights to due process are seriously violated. The prosecution is not required to meet its burden of proving the defendant committed a particular act on a particular and specific occasion. ■ Here, the prosecution neither charged an offense specific as to time, place or other particular, nor did it prove a specific offense with regard to counts II and V. Unlike the evidence supporting counts I, III and IV, there is not substantial evidence to prove the specific offenses in counts II and V. Reversal is thus required. (See also *People* v. *Abdullah* (1933) 134 Cal.App. 155, 158 [25 P.2d 40].)

## II.*

. . . . . . . . . . . . . . . . . . . .

## III.

### IS A DEFENDANT ENTITLED TO ACCESS TO JURORS' ADDRESSES OR PHONE NUMBERS IN ORDER TO SUPPLY THE COURT WITH JUROR AFFIDAVITS IN SUPPORT OF HIS MOTION FOR NEW TRIAL?

Defendant made a motion for mistrial based on jury misconduct and a request that the court provide the addresses and telephone numbers of the jurors so that he could adequately pursue his motion for new trial. Included in the motion was defense counsel's declaration that he requested a list of the telephone numbers of the jurors from the county clerk and was informed that they are not allowed to release that information. Because he did not have the numbers he has been unable to contact the jurors. Defense counsel further declared that he attempted to have the court release the numbers to him at an earlier time but the court had been in another jurisdiction for the two weeks prior.

At the hearing on the motion defense counsel asked the court that if it would not give him access to the information he sought, he would like a continuance so that an investigator could contact the jurors. The following occurred:

"THE COURT: The Court's inclination is to deny the request for a new trial. However, it is required that a motion for new trial be within 60 days, and the Court loses jurisdiction. It cannot be stipulated to, and that time will have lapsed well before you would have completed any investigation.

---

*See footnote, *ante*, page 15.

"MR. GASPERETTI [defense counsel]: I very briefly reviewed that Section of the Code. My impression was time could be waived, but I do not have the Code Section with me.

"THE COURT: Is the matter submitted?

"MR. GASPERETTI: Yes, Your Honor.

"MR. HOFFMAN [district attorney]: Yes, Your Honor.

"THE COURT: The request is denied.

"There was a previous opportunity after the trial to speak with the jurors. The Court invited them to wait to discuss the case with counsel. I don't know if any of them remained or not, but they were invited to wait to discuss it with counsel. The opportunity was given.

"The jurors should be left at peace. They have been taken from their lives, their businesses. They were taken from their jobs, their homes. The Court is not going to invade their privacy now for what the Court perceives to be a fishing expedition, there being nothing specific, except the time within which they reached a verdict.

"It is sort of a Catch 22. ■ ■■ ■■ ■ The Court recognizes that."[2]

Penal Code section 1181 lists the grounds for granting a new trial. It provides in pertinent part: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:

". . . . . . . . . . . . . . . . . .

"2. When the jury has received any evidence out of court, other than that resulting from a view of the premises, or of personal property;

---

[2] The court erred in stating it lost jurisdiction in 60 days. Penal Code section 1191 provides in pertinent part: "In the superior court, after a plea, finding or verdict of guilty, or after a finding or verdict against the defendant on a plea of a former conviction or acquittal, or once in jeopardy, the court must appoint a time for pronouncing judgment, which must be within 28 days after the verdict, finding or plea of guilty, during which time the court shall refer the case to the probation officer for a report if eligible for probation and pursuant to Section 1203; provided, however, that the court may extend the time not more than 10 days for the purpose of hearing or determining any motion for a new trial, or in arrest of judgment, and may further extend the time until the probation officer's report is received and until any proceedings for granting or denying probation have been disposed of."

The provisions of Penal Code section 1191 can be waived by the defendant. (*People* v. *Scott* (1968) 263 Cal.App.2d 581, 586 [69 Cal.Rptr. 901].)

"3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented;

"4. When the verdict has been decided by lot, or by any means other than a fair expression of opinion on the part of all the jurors; . . ."

Evidence Code section 1150 provides in pertinent part: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

█ " '[J]urors are competent witnesses to prove objective facts to impeach a verdict under section 1150 of the Evidence Code.' " (*Bardessono* v. *Michels* (1970) 3 Cal.3d 780, 795 [91 Cal.Rptr. 760, 478 P.2d 480, 45 A.L.R.3d 717].' " '[P]osttrial solicitation and use of jurors' statements concerning their conduct and deliberation and which seek to explain the effect of evidence upon their mental processes is improper. On the other hand, use of a juror's affidavit or declaration is proper to disclose objectively ascertainable overt acts by the jury." (*Drust* v. *Drust* (1980) 113 Cal.App.3d 1, 9 [169 Cal.Rptr. 750].)

█ Defendant asserts that the trial court erred in denying his motion for release of the jurors' addresses and phone numbers; the court's actions seriously deprived him of a means to determine if there was jury misconduct.

Respondent contends that defendant's waiver of juror polling before the verdict was recorded calls into question the sincerity of his claim of jury misconduct. Respondent asserts that the trial court's refusal to disclose the addresses and phone numbers of the jurors was correct because "1) appellant's motion for a mistrial was futile, 2) appellant had earlier waived polling the jury, 3) there were less onerous ways of gaining the same information, such as interviewing jurors before they left the courtroom, and 4) the court had a duty to protect privacy rights of jurors."

Respondent's arguments must fail. First, although the brevity of the deliberations in the instant case does not by itself demonstrate jury misconduct, it would certainly raise a question in the mind of alert trial counsel to investigate and see if something unusual occurred which might have

improperly influenced the verdict. It might very well be true that defendant would be able to produce evidence demonstrating misconduct if he were given the opportunity to contact jurors and seek affidavits from them. It cannot be said that defendant's motion for a new trial was futile.

Secondly, a waiver of polling the jury should not estop the defendant from bringing a motion for new trial. The purpose in polling the jury is to correct any uncertainty or ambiguity in the verdict as returned. (*People* v. *De Soto* (1939) 33 Cal.App.2d 478, 481 [92 P.2d 466].) The motion for new trial is the means to raise issues of jury misconduct; polling the jury has a different purpose.

Next, respondent contends that defendant could have gained the information in a less onerous way, such as interviewing the jurors before they left the courthouse. A defendant should not be precluded from contacting jurors after trial to seek their affidavits merely because none of the jurors chose to stay after they were excused. A jury trial can be a very trying and tiring experience and jurors may be very interested in leaving the courthouse as soon as possible. A juror might feel inhibited talking to counsel with other jurors still present. A juror might want to talk to counsel in a more private situation. A juror might not think he or she has anything to say until he or she has reflected on the trial for a period of time. Also, there are many individuals who do not seek out someone to talk to, but will talk when they are approached. Counsel should not be precluded from seeking to contact jurors at a later time merely because none of the jurors chose to stay following the court's invitation.

Finally, respondent contends that to reveal the names and addresses of jurors would be an invasion of privacy. All people are guaranteed a right to privacy. (Cal. Const., art. I, § 1.) ■ This right is not absolute and may be abridged to accommodate a compelling public interest. (*El Dorado Savings & Loan Assn.* v. *Superior Court* (1987) 190 Cal.App.3d 342, 345 [235 Cal.Rptr. 303].) "When the right to disclosure of information conflicts with the constitutional right of privacy, there should be a 'careful balancing' of the 'compelling public need' for discovery, against the 'fundamental right of privacy.'" *(City and County of San Francisco* v. *Superior Court* (1981) 125 Cal.App.3d 879, 882 [178 Cal.Rptr. 435].) "[T]he interest in ascertaining the truth in judicial proceedings has been held to be sufficiently substantial to justify disclosure of much confidential material, including communications to a psychotherapist." (*Cutter* v. *Brownbridge* (1986) 183 Cal.App.3d 836, 843 [228 Cal.Rptr. 545].)

In the context of jurors' right to privacy, it has been held that disclosure by the county of the identities of potential jurors did not violate privacy

rights and was in fact required by Government Code section 6250. (*Lehman v. City and County of San Francisco* (1978) 80 Cal.App.3d 309, 312 [145 Cal.Rptr. 493].) Government Code section 6250 provides: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state."

"The courts generally have concluded that the public interest in preserving confidential information outweighs in importance the interest of a *private* litigant in the absence of *considerations involving life or liberty.*" (*City & County of S.F.* v. *Superior Court* (1951) 38 Cal.2d 156, 163 [238 P.2d 581], italics added.)

"Admission of jurors' affidavits within the limits set by [Evidence Code] section 1150 protects the stability of verdicts, and allows proof by the best evidence of misconduct on the part of either jurors or third parties that should be exposed, misconduct upon which no verdict should be based. (See Pen. Code, § 1181; Code Civ. Proc., § 657.) The content and conduct of deliberations may already be exposed by jurors at the trial of one who attempted corruptly to influence the verdict, or, in the case of the present two exceptions to the rule, at motion for new trial. Admission of this best evidence of misconduct or improper influence at a motion for new trial, therefore, would not present a breach in the post verdict privacy of jury deliberations. It would merely insure that evidence of misconduct will be available to the courts, freeing them to determine the substantive questions of whether the particular misconduct is a recognized ground for new trial and whether it has prejudiced the losing party. Admission of jurors' affidavits should also have a further prophylactic effect of stripping from all prejudicial misconduct whatever veil of post verdict secrecy is now reserved for the proper deliberations of the jury. '[T]o hear such proof would have a tendency to diminish such practices and to purify the jury room, by rendering such improprieties capable and probable of exposure, and consequently deterring jurors from resorting to them.' (*Wright* v. *Illinois etc. Tel. Co., supra,* 20 Iowa 195, 211.)" (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 350-351 [78 Cal.Rptr. 196, 455 P.2d 132].)

There is a strong public interest in the ascertainment of the truth in judicial proceedings, including jury deliberations. The intrusion into the privacy of the jurors is minimal as they retain a clear right to refuse to talk to counsel and counsel has a duty not to harass or embarrass the jurors. (Rules Prof. Conduct of State Bar, rule 7-106 (D).) Juror affidavits are an extremely valuable tool to explore juror misconduct and are an acceptable means to do so. In a criminal case there are questions of life and liberty

involved. These considerations outweigh the limited and narrow intrusion of releasing the names and addresses of the jurors.

■ Although we have rejected respondent's arguments, it is our opinion that after the verdict, counsel's motion to be provided with the phone numbers and addresses of the jurors must be made in a timely manner with a showing of good cause for any delay and basis for any continuance. (Pen. Code, § 1050.) In the instant case, counsel's motion was made 41 days after trial and only 3 days before the date scheduled to hear the motion for new trial. Counsel did not show a reason for the delay except to allege that the trial judge was out of the jurisdiction for the two weeks prior to the filing of the motion. This is not a sufficient reason since the motion should have been filed prior to the judge's absence and, furthermore, counsel did not show that the judge's absence precluded him from filing a timely motion. Also, counsel did not justify the delay nor did he allege, other than his limited inquiry in the clerk's office, that he had attempted to utilize other means to obtain the information.

## DISPOSITION

Counts II and V are reversed. The case is remanded to the trial court to resentence the defendant on the remaining counts and forward an amended abstract of judgment to the appropriate authorities. In all other respects the judgment is affirmed.

Best, Acting P. J., and Pettitt, J.,* concurred.

---

* Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.