[No. B076034. Second Dist., Div. One. Apr. 26, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY ARMOND SIMMS, Defendant and Appellant.

COUNSEL

Richard H. Chapnik, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sanjay T. Kumar and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

VOGEL (Miriam A.), J.—When warranted by compelling governmental interests, a trial court may seal the court's records of "personal juror

identifying information." (Code Civ. Proc., § 237, subd. (b).)[1] But "[n]ot-withstanding Section 237, a defendant or defendant's counsel may, following final adjudication of a criminal proceeding, request that the court provide personal juror information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing issues on appeal or any other lawful purpose. This information may include jurors' names, addresses, and telephone numbers." (§ 206, subd. (f).) In the case before us, following a posttrial dispute about whether, during trial, the prosecutor had talked to one of the jurors, the trial court denied defense counsel's request for the address and telephone number of that juror. We vacate the judgment and remand with directions to the trial court to disclose the juror's address and telephone number to defense counsel and to take such action as may thereafter become necessary.

## BACKGROUND

Tony Armond Simms was convicted of armed robbery. After the verdict but before sentencing, Simms's aunt (Sophia Windham) told defense counsel (Patrick Thomason) that, during the course of the trial, she saw one of the jurors (Ms. P. Wright) talking to the prosecutor (Deputy District Attorney Wright)[2] in the hallway outside the courtroom. For this reason, defense counsel moved for disclosure of Juror Wright's address and telephone number.

The motion was heard on the date set for sentencing. Ms. Windham was sworn and testified that, two days before the verdict was returned, she saw Mr. Wright talking to a female juror in the hallway. Ms. Windham described the juror, identified her seat in the jury box, and explained that it wasn't until after the verdict was returned, when the court told the jurors it was then okay to talk to the attorneys, that she realized the earlier conversation was inappropriate—at which point she told defense counsel what she had observed. She did not hear any part of the conversation. Mr. Wright was then sworn. In its entirety, his testimony was, "Your honor, I do not remember speaking to any juror that was on this case during the course of this trial. I believe [Ms. Windham's] testimony is untrue."

The trial court denied the motion for disclosure, commenting that, "with regard to the testimony of Sophia Windham, the court does not believe that testimony. The court does not feel that this testimony is credible. And the court believes Mr. Wright when Mr. Wright indicates that he did not speak to the juror in the hallway." Simms was then sentenced to state prison.

---

[1] All section references are to the Code of Civil Procedure.

[2] This is not a typo—both the juror and the prosecutor were named Wright. Although we do not have a transcript of the voir dire, we assume they were not related.

## DISCUSSION

■ Simms contends the trial court was required to disclose Juror Wright's address and telephone number. We agree.

### A.

Under subdivision (a) of section 237, "[t]he names of qualified jurors drawn from the qualified juror list for the superior court shall be made available to the public upon request unless the court determines, pursuant to subdivision (b), that a compelling governmental interest requires that this information should be kept confidential or its use limited in whole or in part." Under subdivision (b) of section 237, "[a]t the conclusion of a criminal jury proceeding, the court may, upon a juror's request, motion of counsel, or on its own motion, order that all or part of the court's record of personal juror identifying information be conditionally sealed upon finding that a compelling governmental interest warrants this action. Prior to discharging the jury from the case, the judge in a criminal action shall notify the jurors of the right of any juror to request sealing of personal juror identifying information pursuant to this section. For purposes of this section, 'compelling governmental interest' includes, but is not limited to, protecting jurors from physical harm or the threat of physical harm."[3]

Section 206 reminds the trial court to give the jurors the notice required by section 237 (§ 206, subd. (a)) and authorizes the prosecutor, defense counsel and their representatives to talk to the jurors after they are discharged, "provided that the juror consents to the discussion and that the discussion takes place at a reasonable time and place." (§ 206, subd. (b).) Subdivision (e) tells us the statute is not meant to prohibit a peace officer from investigating an allegation of criminal conduct. (§ 206, subd. (e).) Subdivision (f) then provides that, "[n]otwithstanding Section 237, a defendant or defendant's counsel may, following final adjudication of a criminal proceeding, request that the court provide personal juror information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing issues on appeal or any other lawful purpose. This information may include jurors' names, addresses, and telephone numbers. [¶]

---

[3]Subdivisions (c) through (f) of section 237 deal with access to sealed juror records and are irrelevant where, as here, the records were not sealed.

At the time of Simms's trial (early 1993), neither section 206 nor section 237 required the trial court to advise the jurors of their right to request an order sealing juror records. Those provisions were added by the Legislature in 1993 and did not become effective until 1994. (Stats. 1993, ch. 632, §§ 1, 2.) This addition has no effect on the issue before us—although, for whatever it is worth, we note that this was a garden-variety robbery with no apparent governmental interest, compelling or otherwise, to justify an order sealing the juror records.

Pursuant to this subdivision, the court shall provide the information requested to the defendant's counsel or any agent of the defendant's counsel but may limit dissemination as provided under subdivision (d) of Section 237." (§ 206, subd. (f), italics added.)

Finally, subdivision (d) of section 237 permits the court to limit access to sealed records "to the defendant, the defendant's counsel, or the defendant's investigator *for the purpose of developing issues of* [*sic*] *appeal or for any other lawful purpose.* The court may require agreement that the defendant, defendant's counsel, or defendant's investigator not divulge jurors' identities or identifying information to others." (Italics added.)

## B.

Simms's lawyer asked for one juror's address and phone number so he could investigate the report by his client's aunt that she had observed a mid-trial conversation between the prosecutor and the juror, a request leading ineluctably to the conclusion that the information was requested for the purpose of developing issues for appeal or for some other lawful purpose (such as a motion for a new trial). No more was required. (*Satz* v. *Superior Court* (1990) 225 Cal.App.3d 1525, 1531-1532 [275 Cal.Rptr. 710] [when the language of a statute is clear and unambiguous, its plain meaning controls]; *Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244] ["It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed."].)

The trial court was neither required nor entitled to hold a hearing to determine whether Simms was entitled to Juror Wright's address and telephone number. It is interesting to note, however, that by holding the hearing it did, the trial court created a record demonstrating the wisdom of the statutory scheme—because we now have before us a conflict created by the testimony of two biased witnesses which could have been resolved by a juror's testimony. On the one hand, Ms. Windham testified that she saw the prosecutor talking to a specific juror, whom she described in some detail ("[s]he's about five foot nine, eight or nine, dark skinned [and] I believe she was sitting in the third front seat"). Mr. Wright, on the other hand, said he did "not remember speaking to any juror" and that he "believe[d]" Ms. Windham's testimony was untrue.[4] While Ms. Windham's bias in favor of her nephew is obvious, so too is Mr. Wright's bias in favor of his own

---

[4]We are puzzled by the equivocal nature of Mr. Wright's testimony—"*I do not remember* speaking to any juror that was on this case during the course of this trial. *I believe* [Ms. Windham's] testimony is untrue." (Italics added.)

reputation. (Rule 5-320(B), Rules Prof. Conduct of State Bar) [during trial, an attorney connected with the case shall not communicate directly or indirectly with any juror]; *In re Possino* (1984) 37 Cal.3d 163, 170 [207 Cal.Rptr. 543, 689 P.2d 115] [it is unethical for an attorney to communicate with a juror during the course of a trial]; *Garden Grove School Dist.* v. *Hendler* (1965) 63 Cal.2d 141, 144-145 [45 Cal.Rptr. 313, 403 P.2d 721] [a midtrial communication between counsel and a juror is prejudicial error].)

By a simple telephone call, defense counsel could have asked Juror Wright whether, during trial, she talked to the prosecutor. A negative answer almost certainly would have put an end to the issue since the defense would have had nothing to gain by providing corroboration for the prosecutor's testimony. But if Juror Wright had confirmed Ms. Windham's testimony and said she did talk to the prosecutor during trial, the result might have been very different. At that time, a hearing would have been proper, on a motion for new trial or on such other motion or petition as may have been appropriate.

## C.

The cases relied on by the People are inapposite. In *People v. Cox* (1991) 53 Cal.3d 618, 698-700 [809 P.2d 351], the defense investigator *had* access to the jurors but they refused to cooperate—they would not sign declarations under penalty of perjury and they refused to come into court to testify. When the jurors advised the trial court they were fed up with the investigator's repeated calls, the court directed that all further communication with the unwilling jurors would be through the court clerk. (*Id.* at p. 697.) In approving this approach, the Supreme Court noted that, "[i]n this manner, the court actually preserved defendant's interests by providing a mechanism whereby the jurors could be relieved of their apprehensions if they were otherwise inclined to discuss the proceedings with defense investigators." (*Id.* at p. 700.) In this context, the court noted that section 206 does not require "the defense be allowed unqualified access to the jury after the conclusion of the trial." (53 Cal.3d at p. 700.) Since Simms was not asking for unqualified access or access to an unwilling juror, the People's reliance on *Cox* is misplaced.[5]

The People's reliance on *People v. Rhodes* (1989) 212 Cal.App.3d 541 [261 Cal.Rptr. 1], is equally misplaced. Sections 206 and 237, which were

---

[5]The most that can be said about *Cox* as it applies to our case is that *if* Juror Wright's phone number and address had been given to defense counsel, and *if* Juror Wright had refused to talk to counsel or his investigator, the trial court could have had the clerk call to inquire whether Juror Wright would be willing to come into court to testify. If she refused, that probably would have been the end of it.

both enacted after *Rhodes* was decided, demonstrate the Legislature's rejection of the procedure developed in *Rhodes.*[6] After noting the intrusive nature of the voir dire process, the court in *Rhodes* suggested that "[p]ermitting parties in a lawsuit as a matter of right to have addresses and telephone numbers to contact and interrogate jurors about their verdict would further jeopardize our jury process." (212 Cal.App.3d at p. 548.) The court then expressed concern about the "harassment of jurors by losing parties," the potential for "jury tampering" (because a juror who reluctantly joined in a verdict might be sympathetic to the overtures of the defeated party), the potential for "stifled" debate if "jury deliberations are subject to compulsory disclosure," and the possibility that lengthy inquiries would defeat rather than promote the finality of verdicts. (*Id.* at pp. 548-549.)

On the other hand, the *Rhodes* court noted, there exists a strong public interest in the ascertainment of truth in judicial proceedings, including jury deliberations, which necessarily means that a verdict reached by prejudicial juror misconduct must not be permitted to stand. "Lifting the veil of postverdict secrecy to expose juror misconduct" would tend to diminish such practices and "purify the jury room" by rendering "such improprieties capable and probable of exposure, and consequently deterring jurors from resorting to them." (*People* v. *Rhodes, supra,* 212 Cal.App.3d at p. 550, internal quotation marks omitted.)

In search of balance, the *Rhodes* court devised what it described as "an appropriate middle ground which can harmonize and satisfy the competing societal interests . . . ." (*People* v. *Rhodes, supra,* 212 Cal.App.3d at p. 551.) Under *Rhodes,* therefore, a defendant's motion for disclosure of the names, addresses and telephone numbers of the jurors who convicted him had to be (a) timely and (b) accompanied by "a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial." (*Id.* at pp. 551-552.) A failure to present the required preliminary showing justified denial of the request for juror information. (*Id.* at pp. 553-554.)

Sections 206 and 237 demonstrate the Legislature's complete rejection of the procedure devised in *Rhodes.* Although it is clear the Legislature was concerned about jurors' privacy rights (hence the procedure for sealing juror records), it is equally clear that, in criminal cases, the Legislature rejected

---

[6]Section 206 was enacted in 1988 as part of the Trial Jury Selection and Management Act, effective in 1989. (Stats. 1988, ch. 1245, § 2, p. 4145.) Section 237 was enacted in 1992, and became effective in 1993. (Stats. 1992, ch. 971, § 3.)

*Rhodes*'s "preliminary showing" requirement as too burdensome when balanced against the strong public interest in the ascertainment of truth in judicial proceedings. Under the plain language of both statutes, all the convicted defendant has to show is that he wants the requested information "for the purpose of *developing* issues on appeal or for any other lawful purpose." (§§ 206, subd. (f), 237, subd. (d), italics added.) No more is required. (See Legis. Counsel's Dig., Sen. Bill No. 1299 (1991-1992 Reg. Sess.) ["This bill would *require* the court to provide the requested information to the defendant's counsel . . . but would permit the court to limit dissemination, as specified" (italics added)].) ▮ Under these circumstances—where the Legislature has enacted a statute addressing an issue which has been the subject of judicial construction—it is presumed the Legislature was fully cognizant of such construction and, when the statute deviates from the judicial construction, the logical inference is that the lawmakers intended to alter the law. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) There is no reason to conclude otherwise in this case.[7]

## D.

The trial court's failure to grant Simms's request for Juror Wright's address and telephone number was error but it does not, at least at this point, require a new trial. Instead, we vacate the judgment and remand to the trial court with directions to disclose Juror Wright's telephone number and address to Simms's attorney and, depending upon the results of counsel's investigation and upon his subsequent motions (if any), to take such further action as may be necessary. (*People* v. *Von Villas* (1992) 11 Cal.App.4th 175, 258-261 [15 Cal.Rptr.2d 112]; *People* v. *Perez* (1992) 4 Cal.App.4th 893, 908-909 [6 Cal.Rptr.2d 141].)[8]

---

[7] The People's reliance on *People* v. *Atkins* (1988) 203 Cal.App.3d 15 [249 Cal.Rptr. 863], disapproved on other grounds in *People* v. *Jones* (1990) 51 Cal.3d 294, 322 [270 Cal.Rptr. 611, 792 P.2d 643], is similarly misplaced. Although *Atkins* did not impose as great a burden on a defendant as did *Rhodes*, it did impose a requirement of timeliness. (*People* v. *Atkins, supra,* 203 Cal.App.3d at p. 28.) Sections 206 and 237, which permit discovery of juror information for purposes of appeal as well as for a motion for a new trial (or for any other lawful purpose), do not require that the request be made at any particular time.

[8] We summarily reject Simms's contention that the trial court relied on improper factors in sentencing him to high term on the gun-use enhancement. The trial court properly relied on the threatening manner in which Simms used the gun (he held it to the victim's neck and threatened death). (Cal. Rules of Court, rule 428(b).) The court's reference to other, improper factors is irrelevant (*People* v. *Price* (1991) 1 Cal.4th 324, 492 [3 Cal.Rptr.2d 106, 821 P.2d 610]) because it is not reasonably probable that, had the trial court recited only the proper factor, the sentence would have been any different. (*Ibid.*)

## DISPOSITION

The judgment is vacated and the cause is remanded to the trial court with directions to disclose Juror Wright's telephone number and address to defense counsel and to take such further action as thereafter may be necessary.

Spencer, P. J., and Ortega, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 14, 1994.