Opinion
 

 ORTEGA, J.
 

 Jimmy Dwayne Jefflo appeals from the judgment entered following his jury conviction of two counts of residential robbery while
 
 *1316
 
 acting in concert and a finding of personal gun use on both counts. (Pen. Code, §§211, 212.5, subd. (a), 213, subd. (a)(1)(A), 12022.5.)
 
 [1]
 
 Five prior convictions had been charged, arising out of two trials: two 1983 firearm assault convictions (§ 245, subd. (a)(2)) and three 1989 robbery convictions (§ 211). As to each count, the court found true a 1983 assault with a firearm conviction (§ 667, subd. (a)(1)) and a 1989 robbery conviction (§ 667.5, subd. (b)). The court also found true five prior convictions within the meaning of sections 667.5, subdivisions (b)-(i), and 1170.12, subdivisions (a)-(d).
 

 Issues
 

 We reject appellant’s claim that the trial court erred in denying his posttrial application for disclosure of jurors’ identifying information. In so doing, we acknowledge that legislative changes to Code of Civil Procedure sections 206 and 237 after our decision in
 
 People
 
 v.
 
 Simms
 
 (1994) 24 Cal.App.4th 462 [29 Cal.Rptr.2d 436] effectively nullified our conclusion in
 
 Simms
 
 that the preliminary public-policy balancing test enunciated in
 
 People
 
 v.
 
 Rhodes
 
 (1989) 212 Cal.App.3d 541, 551-552 [261 Cal.Rptr. 1], no longer applies to a defendant’s request for juror information
 
 (People
 
 v.
 
 Simms, supra,
 
 24 Cal.App.4th at pp. 467-469). (See fa. 8,
 
 post.)
 

 In the unpublished portion of this opinion we reverse and remand for a determination of whether appellant’s two 1983 convictions of firearm assault qualify as prior convictions within the meaning of the three strikes law and section 667, subdivision (a) for purposes of the related enhancements. We also remand for resentencing so that the trial court may exercise its discretion as to whether to impose consecutive or concurrent sentences on appellant’s current convictions.
 

 We otherwise affirm the judgment, rejecting appellant’s claims of error: The trial court wrongly denied his request for a transcript of his first trial in this matter; the court wrongly denied his motion for a continuance of less than half a court day to obtain the testimony of a defense witness; the definition of “reasonable doubt” in CALJIC No. 2.90 (1994 rev.) given to the jury violated his constitutional rights; the cumulative effect of these errors deprived him of due process and a fair trial; his first degree robbery convictions must be reduced to second degree because the jury did not explicitly fix the degree in their verdicts; only two of his prior serious felony convictions were brought and tried separately, requiring a sentence reduction; and his sentence must be reduced because section 1170.12, subdivision
 
 *1317
 
 (c) contemplates the use of aggregate sentencing principles in calculation of the third strike term.
 

 Facts
 

 Between approximately 9 and 9:15 a.m. on July 22, 1995, Norman and Tracey Lewis were in one of the bedrooms of their Hawthorne apartment. After receiving a telephone call, Mrs. Lewis left the bedroom. She opened the front door to let in her son, Jerry Parnell. Jerry (who later was identified as a suspect and arrested July 31), appellant and two or three other men entered the apartment, holding guns. Jerry told Mrs. Lewis to be quiet, that the men wanted her husband. Mrs. Lewis asked why they wanted Mr. Lewis.
 

 Mr. Lewis heard his wife screaming, went into the hallway, and saw his wife, his stepson and four men, including appellant, holding semiautomatic handguns, standing in the front room. Mr. Lewis had never before seen appellant or the other armed men. They pointed their guns at him and, as directed, Mr. Lewis raised his hands, turned, and walked to the bedroom.
 

 The men ordered Jerry and Mrs. Lewis into the kitchen. One of the men stayed in the kitchen with them. When he asked for the location of the Lewises’ safe and money, Mrs. Lewis told him the location of her jewelry. The robber told her if they did not come up with $50,000, he would “pop” them. Mrs. Lewis believed the robber would kill her. The robber moved Jerry and Mrs. Lewis into another bedroom, from which Mrs. Lewis could hear her husband pleading with the robbers.
 

 Meanwhile, appellant and two of the other armed robbers ordered Mr. Lewis to lie down on the bedroom floor and demanded $50,000 to $100,000, jewelry, and the safe’s location. Mr. Lewis had neither the money nor a safe. Appellant held a gun to Mr. Lewis’s head, shouted demands for money, and threatened to shoot him. Mr. Lewis feared appellant would kill him if he didn’t produce some money. The robbers went through the bedroom, taking some jewelry and a mink coat.
 

 One of the men went into the bedroom where Mrs. Lewis was being held and retrieved an iron. Returning to Mr. Lewis, he plugged in the iron and when it was hot, appellant held Mr. Lewis’s legs while another man burned Lewis’s buttocks, causing third degree bums. Mr. Lewis screamed. Appellant threatened to kill him if he didn’t disclose where the safe and $100,000 were. Mr. Lewis told him where to find between $4,000 and $5,000 he had collected from his limousine service and said he had more money. Appellant removed the pillow and gun he had been holding to Mr. Lewis’s head. Mr.
 
 *1318
 
 Lewis said the additional money was at the bank, and he and they could go get it. The man who had burned Mr. Lewis came toward him with the iron and said that when he finished with Mr. Lewis again, Mr. Lewis would tell him where the $100,000 was.
 

 Mr. Lewis jumped up and grappled with the robber who held the iron. His momentum took him out the second floor window. Someone shot at him. He thought the shots came from appellant’s position, but did not see him fire. Mrs. Lewis, hearing the shots, jumped out the window of the other bedroom. Jerry jumped with her.
 

 Mr. Lewis fractured his shoulder, broke several ribs, and punctured a lung in the fall. He was hospitalized for about a week. Mrs. Lewis fractured her right foot, sprained both ankles and sustained other injuries.
 

 Discussion
 

 I-IX
 
 *
 

 X
 

 Appellant says it was error to summarily deny his posttrial application for disclosure of jurors’ identifying information. We conclude otherwise.
 

 By application filed October 9, 1996, appellant sought an order disclosing jurors’ addresses and telephone numbers, calling the information “necessary in order that counsel may prepare a motion for new trial based on jury misconduct.” Counsel’s supporting declaration said he had been told by the county clerk that the juror information could not be released without a court order and that he had been unable to obtain the juror information by other means.
 

 Counsel’s declaration also asserted good cause existed for disclosure because he had “been informed by the defendant’s girlfriend that the day before the jury reached their verdict, one of the jurors spoke to the defendant’s girlfriend and informed her that the jury was hung. Thus, it is necessary to contact this particular juror and the other jurors to investigate jury misconduct relating to possible conversations between that juror and/or other jurors with nonjurors regarding jury deliberations.”
 

 
 *1319
 
 The accompanying memorandum of points and authorities cited as authority for the request Code of Civil Procedure section 206, subdivision (b) and
 
 People
 
 v.
 
 Rhodes, supra,
 
 212 Cal.App.3d 541, 551-552, and its ruling that “upon timely motion, counsel for a convicted defendant is entitled to the list of jurors who served in the case, including addresses and telephone numbers, if the defendant sets forth a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through'other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial.”
 
 [6]
 

 On the date set for sentencing, the matter was heard. The prosecutor did not file written opposition and did not argue the matter. Defense counsel told the court appellant’s “live-in partner, Ms. Sheila Williams, advised [counsel] that after the second day of deliberations,” a juror had told her the jury was unable to reach a verdict. Counsel added it had been the next day, around noon, that he was told the jury had reached a verdict. He said that based on what he had been told he saw no “problem” if, instead of ordering the information released, the court wished to prepare a letter on its own stationery, adding counsel’s name and address, and sending a copy to each juror, asking whether that juror “wanted to contact [counsel] to discuss any aspect of the case.”
 

 Counsel then told the court that after the verdict had been rendered, and jury members individually polled, he and the prosecutor were talking to jurors outside the courtroom, when he overheard a juror ask the prosecutor if “that [was] all the evidence [he] had.” Counsel added the juror appeared to feel that the case perhaps was not sufficient. Counsel volunteered to draft the requested letter to jurors so that “the court would not disclose to me or any of my agents the addresses of the jurors.”
 

 The court noted the juror poll in which the juror indicated the guilty verdict was an individual verdict, and commented that although the jury might have been hung at one point, the jurors were ultimately able to decide the matter. The court observed that the only possible misconduct appeared to be that one of the jurors had violated the court’s instruction and admonitions and spoken to appellant’s girlfriend. Stating, “That [conduct] in and of itself does not appear to me to give rise to any presumption of prejudice,” the court denied the application.
 

 Disclosure of confidential juror information is governed by sections 206 and 237. As amended by Statutes 1996, chapter 636, section 2, effective
 
 *1320
 
 September 19, 1996, section 237, subdivision (a)(1) provides that juror names are to be made available to the public on request unless the court determines that a compelling interest, as defined by subdivision (b), requires this information be kept confidential or its use limited. Subdivision (a)(2) provides that on the recording of a jury verdict in a criminal jury proceeding, the court’s record of personal juror identifying information of trial jurors, consisting of names, addresses, and telephone numbers, is to be sealed until further order of the court. Subdivision (a)(3) defines “sealed” or “sealing.”
 

 Section 237, subdivision (b), provides: “Any person may petition the court for access to these records. The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror’s personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure. A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm. If the court does not set the matter for hearing, the court shall by minute order set forth the reasons and make express findings either of a lack of a prima facie showing of good cause or the presence of a compelling interest against disclosure.”
 
 [7]
 

 On appeal, appellant says that “at a minimum, the defense is entitled to the information upon a showing of good cause” and that he showed good cause—jury misconduct as grounds for a new trial motion. According to appellant, the court, on his showing, should have ordered a hearing or at
 
 *1321
 
 least should have sent the jurors a confidential questionnaire or “even” a letter asking if jurors would discuss the issue. He contends the trial court failed to analyze his application in terms of the prima facie showing required by section 237 and, instead, assessed his application according to the more stringent standard applicable when ruling on a subsequent hearing once the threshold good cause showing has been made.
 
 [8]
 

 
 *1322
 
 The question, therefore, is whether the information in counsel’s sworn declaration and his representations to the court at the subsequent hearing constituted good cause. The hearsay declaration did not name appellant’s girlfriend, whom counsel named only at the sentencing hearing. Her oral testimony was not offered. Presumably, she would have testified, consistently with counsel’s declaration, that during deliberations a juror had told her the jury was deadlocked. Assuming the truth of that assertion, the juror disclosed no more than was disclosed by a jury note to the court on July 29, 1996, stating they were “having a hard time reaching a verdict” and requesting reading of testimony. The next afternoon, the jury returned its guilty verdict, and each juror answered “yes” when individually polled. Appellant does not explain how the juror’s conduct was “of such a character as is likely to have influenced the verdict improperly” (Evid. Code, § 1150, subd. (a)) or what the statement meant other than that at whatever point the statement was made the jury had not agreed on a verdict.
 

 Appellant says the court itself characterized the juror’s statement as misconduct by acknowledging that juror disobeyed the court’s admonitions and instructions. Clearly, however, the court was loathe to term the purported juror statement “misconduct.” In any event, appellant does not show how the alleged statement harmed him.
 

 At the hearing, defense counsel told the court he had overheard a posttrial exchange between another, unidentified, juror and the prosecutor, in which the juror asked if “that was all the evidence” he had. Counsel’s comment to the court that the juror appeared to feel that the case perhaps was not sufficient did not include an explanation of why counsel did not follow up at the moment he heard the statement if he believed it portended misconduct. The statement itself conveys nothing more than that the juror might have been curious about whether evidence existed that was not presented at trial. This did not mean the evidence that was presented failed to persuade the juror, beyond a reasonable doubt, of appellant’s guilt.
 

 Under the circumstances, counsel’s declaration and later representations to the court did not constitute a good cause showing of juror misconduct justifying a subsequent hearing under Code of Civil Procedure section 237.
 

 Since we hold that appellant did not meet his threshold burden of demonstrating good cause for a hearing concerning the release of identifying
 
 *1323
 
 information on all the jurors, we also reject his claim that the court was obliged to send a letter to the jurors. We do not reach his claim that the court’s application of the standard applicable on the ultimate question of whether a new trial is in order, rather than the standard for evaluating good cause for a hearing on entitlement to the identifying juror information, constituted application of a wrong standard and requires remand.
 

 Appellant makes a two-sentence assertion that the court’s denial of his “right” to a hearing and a full and fair opportunity to develop his new trial motion deprived him of due process of law. His authority does not apply to this case. Unlike the situation in
 
 Hicks
 
 v.
 
 Oklahoma
 
 (1980) 447 U.S. 343, 346 [100 S.Ct. 2227, 2229-2230, 65 L.Ed.2d 175], where the jury had imposed a penalty based on an instruction incorrect under state law, sections 206 and 237 describe a posttrial procedural right under, state law. Appellant makes no showing of how the court’s ruling denied him a fair trial.
 

 Disposition
 

 We reverse and remand for retrial of the two charged 1983 assault with a firearm convictions in Los Angeles Superior Court case No. A903297. The prosecution is to present additional evidence at a retrial of those prior conviction allegations.
 
 (People
 
 v.
 
 Monge
 
 (1997) 16 Cal.4th 826, 845 [66 Cal.Rptr.2d 853, 941 P.2d 1121].) We also remand for resentencing so that the trial court may exercise its discretion whether to impose consecutive or concurrent sentences on appellant’s current offenses. In all other respects, the judgment is affirmed.
 

 Spencer, P. J., and Vogel (Miriam A.), J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied August 19, 1998.
 

 [1]
 

 Additional undesignated statutory references are to the Penal Code, unless otherwise noted.
 

 *
 

 See footnote,
 
 ante,
 
 page 1314.
 

 [6]
 

 Undesignated statutory references in part X are to the Code of Civil Procedure.
 

 [7]
 

 Section 206 was added in 1988 (Stats. 1988, ch. 1245, § 2, p. 4140). Section 206 was amended and section 237 was added in 1992 (Stats. 1992, ch. 971, §§ 2, 3, pp. 4597-4599). Both statutes were amended in 1993 (1993 Stats., ch. 632, §§ 1, 2) and 1995 (1995 Stats., ch. 964, §§ 2, 3). The pertinent portions of the current versions of the statutes, as amended in 1996, cited above, contain changes not relevant here. Appellant was tried in My 1996, and the jury verdict on the substantive charges was rendered My 30, 1996. The 1996 statutory amendments were effective as urgency legislation September 17, 1996. Appellant filed his application for juror information on October 9. His application was denied, his motion for new trial was denied, and he was sentenced on October 18, 1996. Appellant cites the 1995 versions of sections 206 and 237. Respondent cites the 1992 version of section 206 and the 1993 version of section 237. Neither party addresses that incongruity. We apply the 1996 version of both statutes because it appears no constitutional right of appellant is implicated by what are clearly for purposes of this case procedural amendments to procedural statutes. (See, e.g.,
 
 Collins
 
 v.
 
 Youngblood
 
 (1990) 497 U.S. 37, 41-52 [110 S.Ct. 2715, 2718-2724, 111 L.Ed.2d 30];
 
 Tapia
 
 v.
 
 Superior Court
 
 (1991) 53 Cal.3d 282, 294-296 [279 Cal.Rptr. 592, 807 P.2d 434].)
 

 [8]
 

 Considerable judicial ink has been consumed in addressing (1) whether the preliminary public policy balancing test enunciated and applied to a defendant’s request for juror information in
 
 People
 
 v.
 
 Rhodes, supra,
 
 212 Cal.App.3d 541, 551-552, survived the 1992 amendment of section 206 and enactment of section 237 and (2) whether our ruling in
 
 People
 
 v.
 
 Simms, supra,
 
 24 Cal.App.4th 462, that those enactments impliedly overruled
 
 Rhodes,
 
 properly interpreted the statutes. Because appellant acknowledges that since the 1995 amendments to both sections, he was required at least to show good cause in order to obtain a hearing, the survival of the
 
 Rhodes
 
 test is not squarely before us. However, since publication of
 
 Simms,
 
 every other published appellate opinion evaluating its conclusion that the statutory enactments overruled
 
 Rhodes
 
 has concluded, for varying reasons, that the
 
 Rhodes
 
 test survived the 1992 amendment to section 206 and enactment of Code of Civil Procedure section 237.
 
 (People
 
 v.
 
 Duran
 
 (1996) 50 Cal.App.4th 103, 115-123 [57 Cal.Rptr.2d 635];
 
 People
 
 v.
 
 Wilson
 
 (1996) 43 Cal.App.4th 839, 849-852 [50 Cal.Rptr.2d 883];
 
 People
 
 v.
 
 Granish
 
 (1996) 41 Cal.App.4th 1117,1123-1131 [49 Cal.Rptr.2d 45];
 
 People
 
 v.
 
 Barton
 
 (1995) 37 Cal.App.4th 709, 716 [43 Cal.Rptr.2d 671].) As did
 
 Simms,
 
 each of these
 
 post-Simms
 
 decisions dealt with trials which predated the 1995 amendments to sections 206 and 237. By certain material changes to sections 206 and 237, in 1995 the Legislature impliedly overruled
 
 Simms
 
 and established a statutory model which directly reflects the public policy concerns evaluated in
 
 Rhodes,
 
 thus impliedly validating
 
 Rhodes’s
 
 preliminary showing requirement. Perhaps the clearest revelation of the Legislature’s intent is the current wording of section 206, subdivision (f). As amended in 1992, the version in effect when
 
 Simms
 
 was decided read, “Notwithstanding Section 237, a defendant or defendant’s counsel may, following final adjudication of a criminal proceeding, request that the court provide personal juror information within the court’s records necessary for the defendant to communicate with jurors for the purpose of developing issues on appeal or any other lawful purpose. This information may include jurors’ names, addresses, and telephone numbers.” In contrast, the current version quoted in the text, with changes from the 1995 version not material here, mandates compliance with the procedure set out in section 237. Instead of telling the reader that “[notwithstanding Section 237,” a defendant or his counsel might “request” the court to provide the juror information, subdivision (f) now directs that “pursuant to Section 237,” a defendant or his counsel may “petition” for juror information. In addition, the last sentence of the version operative in
 
 Simms
 
 read, “ ‘Pursuant to this subdivision, the court shall provide the information requested to the defendant’s counsel or any agent of the defendant’s counsel but may limit dissemination as provided under subdivision (d) of Section 237.’ ”
 
 (People
 
 v.
 
 Simms, supra,
 
 24 Cal.App.4th at p. 466.) The last sentence of subdivision (f) now reads, with 1996 changes not material here, “The court shall consider all requests for personal juror identifying information pursuant to Section 237.” Moreover, section 1 of the 1995 statute states, “The Legislature finds and declares that jurors who have served on a criminal case to its conclusion have dutifully completed their civic duty. It is the intent of the Legislature in enacting this act to balance the interests of providing access to records of juror identifying information for a particular, identifiable purpose against the interests in protecting the jurors’ privacy, safety, and well-being, as well
 
 *1322
 
 as the interest in maintaining public confidence and willingness to participate in the jury system.” (Stats. 1995, ch. 964, § 1.) Such a clear legislative statement validates the
 
 Rhodes
 
 public policy balancing test. A reading of the current statutes quickly reveals the Legislature’s concern for juror protection clearly manifested in the current versions of sections 206 and 237.