Filed 12/14/20  P. v. Hughley CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICHARD WAYNE HUGHLEY,<br><br>Defendant and Appellant. | B298565<br>(Los Angeles County<br>Super. Ct. No. MA072407) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann Mitchell, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Richard Hughley was convicted of battery on a nonconfined person by a prisoner (Pen. Code,[1] § 4501.5). On appeal, he asks us to review independently the personnel records of law enforcement officers involved in the case to determine whether any more records should have been turned over to him in discovery. He also argues (1) the court erroneously denied his request for a continuance; (2) the prosecutor committed misconduct; (3) the court failed to give necessary jury instructions; and (4) the court should have granted his motion for juror identification information. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Hughley, a prison inmate, was charged with battery on a nonconfined person, correctional officer Fredy Ulloa. Before trial, Hughley moved for discovery of personnel records of six correctional officers under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). The court conducted a lengthy in camera hearing with two custodians of records and ultimately ordered disclosure of records of three officers.

On the day before trial was to begin, Hughley moved for a continuance on the ground his attorney Robert Nadler had been in trial and needed more time to investigate potential witnesses. On the morning of trial, Nadler told the court he needed a continuance for an additional reason: He had just discovered the inmates he had last ordered out of prison six months earlier for a court appearance were not still in local custody. Nadler told the court he did not know inmates were sent back to their prisons if

---

[1] All undesignated statutory references are to the Penal Code.

2

they did not have a future local court date; he thought once inmates were ordered in, they remained in local custody indefinitely. The court did not believe Nadler's representation, found Hughley had not exercised diligence to secure the witnesses' attendance by legal means, and denied the request for a continuance because Hughley had not shown no good cause to delay the trial.

Although the court denied the continuance, after Nadler advised the court the three inmates had given "detailed written statements" in which they said Hughley had been attacked and assaulted by correctional officers after having done nothing wrong, the court intervened to assist in securing the presence of the inmate Nadler identified as most important to the defense. The court ordered the Department of Corrections to transport the inmate, Larry Ridge, to the courthouse the following day.

The next morning, however, Ridge refused to come to court. At this point, Nadler admitted to the court he had never spoken with Ridge and did not know if he was willing to testify. Nadler also disclosed that the inmates' previously described written statements were actually "to whom it may concern" letters provided by Hughley, and neither Nadler nor his investigator had ever spoken with the inmates or confirmed the inmates wrote the letters. The court said this development confirmed its prior ruling denying the continuance and agreed with Nadler that his next step was to see Ridge as soon as possible.

The People presented a series of correctional officer witnesses who testified Hughley had resisted when Ulloa attempted to handcuff him, striking Ulloa in the chest with his elbow. The two men ended up in a punching brawl that ended when other officers intervened. The prosecution, however,

elected to rely only on the initial elbow to Ulloa's chest as the alleged battery.

Hughley did not present any evidence or witnesses. The jury convicted Hughley as charged. After trial, the court denied Hughley's motion to unseal juror identification information. Hughley was sentenced to the upper term of four years in prison, doubled pursuant to the "Three Strikes" law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)). He appeals.[2]

## DISCUSSION

I.  **Review of Personnel Records**

Pursuant to *Pitchess*, Hughley requested discovery of the personnel records of the correctional officer (Ulloa) who was the alleged victim of the battery and five other correctional officers. The court granted the motion as to all six officers with respect to records relating to falsehoods, fabrication, false details, dishonesty, perjury, and falsification of reports over the prior five years; additionally, for two officers, the court granted the motion as to incidents involving allegations of excessive force. Hughley requests we review the record of the in camera proceedings for error.

---

[2]  Separately, Hughley filed a petition for writ of habeas corpus on December 16, 2019 (Case No. B303008). The petition will be decided by separate order.

4

We have reviewed the sealed record of the proceedings. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) At the in camera proceedings the custodians of records testified under oath they had searched in all possible locations for documents responsive to the court's ruling. Except for one inadvertently produced document that was on its face nonresponsive to the scope of the court's inquiry, the court ordered the disclosure of every matter identified as potentially relevant to the *Pitchess* inquiry. We conclude the trial court appropriately exercised its discretion regarding the disclosure of material from the officers' personnel files. (*Mooc*, at p. 1229.)

## II.    **Denial of Continuance**

Hughley argues the trial court abused its discretion when it denied his motion for a continuance. A party seeking a continuance has the burden of showing he or she "exercised due diligence in securing the witness's presence, that the expected testimony was material, noncumulative, and could be secured within a reasonable period of time, and that the facts to which the witness was expected to testify could not otherwise be proven." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 509.) Hughley failed to establish he had exercised due diligence in securing the presence of his desired witnesses: Nadler failed to subpoena his prospective witnesses or ensure they were ordered out and remained in local custody. Moreover, Nadler had never interviewed the prospective witnesses and therefore could not establish the witnesses would provide material testimony. As Hughley did not demonstrate good cause for the continuance, the trial court did not abuse its discretion in denying his request.

III.     **Alleged Prosecutorial Misconduct**

The prosecutor asked three correctional officer witnesses a series of questions about the consequences they would face if they falsified their reports and whether they would lie to protect another officer.  Hughley argues the prosecutor committed misconduct by asking these questions, which he describes as impermissible vouching "insinuating the correctional officers would not lie or they would face the threat of losing their careers and benefits and likely even suffer imprisonment."  While the parties disagree about whether Hughley preserved this claim for appeal, we need not resolve that issue because the claim fails on its merits.

Improper vouching occurs when a prosecutor "either (1) suggests that evidence not available to the jury supports the argument, or (2) invokes his or her personal prestige or depth of experience, or the prestige or reputation of the office, in support of the argument." (*People v. Anderson* (2018) 5 Cal.5th 372, 415.) Typical vouching claims focus on prosecutors' closing arguments, but here Hughley argues the act of asking questions designed to elicit information about the negative consequences of untruthfulness constituted vouching.

The prosecutor did not commit misconduct with this line of questioning designed to elicit evidence to support the witnesses' credibility.  The prosecutor's questions were straightforward inquiries about what the officers stood to lose if they lied and whether they would lie in reports or on the witness stand.  The existence or nonexistence of a bias, interest, or other motive is relevant to the jury's determination of the credibility of a witness. (Evid. Code, § 780, subd. (f).)  Asking these questions did not amount to vouching.  In fact, the questions were necessary to

6

avoid vouching in closing argument. Unless evidence of the negative consequences for lying is in the record, a prosecutor improperly vouches for law enforcement witnesses by suggesting officers were credible because they had so much to lose professionally if they lied. (*People v. Rodriguez* (2020) 9 Cal.5th 474, 482–483 ["When a prosecutor argues beyond the record about the career risks of untruthful testimony, the prosecutor invites the jury to fill in gaps in the evidentiary record by reference to the jury's own surmise based on the special reputation of law enforcement agencies and officers for veracity, as well as suppositions about the special insight prosecutors may have into law enforcement disciplinary procedures. The prosecutor thus 'invite[s] the jury to rely on the prestige of the government and its agents rather than the jury's own evaluation of the evidence' "].) Here, the prosecutor's questions properly elicited the evidence necessary to support his closing argument. Hughley has not demonstrated misconduct.

## IV.   Jury Instructions

Hughley contends the trial court had a sua sponte duty to instruct the jury on the defense of accident and on the prosecution's burden to prove Ulloa was lawfully performing his duties and did not use excessive force. The trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case. (*People v. Brooks* (2017) 3 Cal.5th 1, 73.) This "duty to instruct extends to defenses 'if it appears . . . the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*Ibid.*)

7

A.    *Instruction on Defense of Accident*

Although he did not request such an instruction in the trial court, Hughley argues the trial court had a sua sponte duty to instruct on accident because his defense theory at trial was the elbowing conduct was accidental and did not constitute a battery. The jury was properly instructed on the requirement that a touching be willful in order to constitute a battery:  CALCRIM No. 2723, given at trial, informed the jury that to find Hughley guilty of battery on a nonconfined person, the People had to prove he "willfully touched" Ulloa.  It further advised the jury a person commits an act willfully "when he or she does it willingly or on purpose."  Had the jury believed Hughley touched Ulloa inadvertently or by accident, then, applying CALCRIM No. 2723, it would have found the touching not to have been willful and would have acquitted him of the charged offense.  Because this point of law was addressed by the instructions given to the jury, the trial court had no sua sponte obligation to further instruct on accident in the absence of a request from counsel.  A trial court "has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal."  (*People v. Lee* (2011) 51 Cal.4th 620, 638.)

Hughley contends if the court had no sua sponte obligation to instruct the jury on accident, then his trial counsel's failure to request an instruction on accident constituted ineffective assistance of counsel within the meaning of *Strickland v. Washington* (1984) 466 U.S. 668.  To establish ineffective assistance of counsel, Hughley must demonstrate "the defendant must first show counsel's performance was deficient, in that it fell

below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."  (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)  A conviction may be reversed on direct appeal for ineffective assistance only if the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, counsel was asked for a reason and failed to provide one, or there simply could be no satisfactory explanation.  (*Ibid*.)

Here, the record does not affirmatively disclose defense counsel lacked a rational purpose for failing to request an instruction on the defense of accident.  And counsel was not asked to explain his decision.  Counsel could reasonably have concluded there was no need to request a pinpoint instruction on accident because the instructions as given allowed him to rebut the element of willfulness without directly contradicting the primary defense argument that Hughley had not elbowed Ulloa at all.  Because the record does not demonstrate the absence of any rational tactical purpose for the failure to request an instruction on accident, Hughley's claim must be denied on direct appeal.  (*Mai*, *supra*, 57 Cal.4th at p. 1009.)

Moreover, even if counsel's failure to request the instruction constituted representation falling below an objective standard of reasonableness for professional representation, it also cannot be determined on this record whether the result would have been more favorable to Hughley if counsel had asked for a limiting instruction.  Proof of these matters requires a showing beyond the scope of the record on appeal.  For this reason, the California Supreme Court has held claims of ineffective

9

assistance of counsel based on counsel's alleged failure to act in a particular manner should be raised in habeas corpus proceedings. (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 [a claim of ineffective assistance of counsel relating to why counsel acted or failed to act in a specific manner "is more appropriately decided in a habeas corpus proceeding"].)  As Hughley has neither established his counsel's performance fell below an objective standard of reasonableness nor demonstrated a reasonable probability the result would have been different had the instruction been requested and given, we decline to reverse his conviction on this ground on direct appeal.

B.      *Instruction on Use of Force*

Hughley argues the court should have instructed the jury sua sponte with CALCRIM No. 2670.  This instruction advises the jury that the People have the burden of proving beyond a reasonable doubt the correctional officer was lawfully performing his or her duties, an officer is not lawfully performing his or her duties if he or she uses excessive force, and a person may lawfully use reasonable force to defend himself or herself if an officer uses excessive force.

Because the officer's lawful performance of his or her duties is not an element of the crime charged here, the court did not err when it did not instruct the jury with CALCRIM No. 2670.  The elements of battery on a nonconfined person are "(1) [t]he defendant was confined in a state prison; (2) while confined, the defendant willfully touched the victim in a harmful or offensive manner; and (3) the victim was not confined in a state prison." (*People v. Flores* (2009) 176 Cal.App.4th 924, 930–931.)  The cases on which Hughley relies are inapposite because they

10

involve offenses in which an officer's lawful performance of his or her duties is an element of the crime. (See *People v. White* (1980) 101 Cal.App.3d 161; *People v. Olguin* (1981) 119 Cal.App.3d 39.)

To the extent Hughley claims this instruction should have been given for the purpose of advising the jury of his right to defend himself from excessive force, the court did not err. The only act alleged to have constituted a battery was Hughley's initial action of striking Ulloa with his elbow. There was no evidence to support an inference Ulloa used excessive or unreasonable force on Hughley before Hughley elbowed him. On this evidence, the court was not required to give this instruction.

V.  **Motion for Disclosure of Juror Information**

Before sentencing, Hughley filed a motion to unseal juror identification information. The motion was supported by defense counsel's declaration that during a hallway conversation between counsel and jurors after the jurors had concluded their service, "several jurors indicated that even if the touching between the defendant's elbow and the chest area of [O]fficer Ulloa was accidental then that would still be enough for conviction." Hughley sought jurors' contact information so his investigator could interview them to determine whether they misunderstood the law. The court denied the motions. Hughley asserts this was error.

Following a verdict, a defendant may "petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." (Code Civ. Proc., § 206, subd. (g).) "The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal

11

identifying information.  The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release" of the requested information.  (Code Civ. Proc., § 237, subd. (b).)  To demonstrate good cause, the party seeking disclosure must " 'set[] forth a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial.' "  (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 990.)

The trial court correctly concluded Hughley had not shown sufficient cause under Code of Civil Procedure section 237 to warrant a hearing.  The only line of inquiry opened by Hughley's motion was whether any jurors misunderstood the law.  Pursuit of this topic with the jurors would require exploring the mental processes and rationales which led them to the guilty verdict, an investigation prohibited by Evidence Code section 1150.  (*People v. Jones* (1998) 17 Cal.4th 279, 316; Evid. Code, § 1150, subd. (a) ["any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly.  No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined"]; *In re Manriquez* (2018) 5 Cal.5th 785, 799 [" 'Evidence of a juror's mental process—how the juror reached a particular verdict, the effect of evidence or argument on the juror's decisionmaking—is inadmissible' "].)  As

the evidence Hughley intended to develop through interviewing jurors would have been inadmissible under Evidence Code section 1150, Hughley did not make a prima facie showing of good cause for a hearing on disclosure of jurors' identifying information. (*Jones*, at pp. 316–317 [no abuse of discretion to deny motion for juror information where only avenue of inquiry concerning juror misconduct is barred by Evid. Code, § 1150]; *People v. Jefflo* (1998) 63 Cal.App.4th 1314, 1322 [no showing of good cause to justify a hearing on release of juror information where, although jury was hung at one point, decision was ultimately reached and the only evidence of misconduct was a comment by one juror before the verdict that the jury was hung and a single juror's question to district attorney asking if that was all the evidence he had].)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, J.

We concur:

BIGELOW, P. J.                    WILEY, J.

13